NATIONSBANK OF NORTH CAROLINA, N.A., Plaintiff v. AMERICAN DOUBLOON CORPORATION, WALTER ABRAMS, DONALD H. PARSONS, ROGER D. GOOD, and RESOURCES PLANNING CORPORATION, Defendants

No. COA96-438

(Filed 4 March 1997)

**1. Secured Transactions § 118 (NCI4th)— knitting machines—deficiency judgment—commercially reasonable sale—value of collateral.**

The trial court did not err in an action arising from the sale of knitting machines used as collateral by failing to find as a matter of law that plaintiff was barred from obtaining a deficiency judgment where there was no support for defendant guarantors'

NATIONSBANK OF N.C. v. AMERICAN DOUBLOON CORP.

[125 N.C. App. 494 (1997)]

argument that plaintiff's actions bar all rights to a deficiency judgment or suggest an intent to retain the collateral in full satisfaction of the debt as a matter of law. Failure to give notice and/or to dispose of collateral in a commercially reasonable manner results in a presumption that the collateral was worth at least the amount of the debt and the amount that could have reasonably been obtained from a commercially reasonable sale of the collateral being credited to the debt. A consent judgment signed by the parties as to the value of property was a final judgment and was binding upon the parties.

**Am Jur 2d, Secured Transactions §§ 638, 640, 641.**

**Uniform Commercial Code: burden of proof as to commercially reasonable disposition of collateral. 59 ALR3d 369.**

**What is "commercially reasonable" disposition of collateral required by UCC § 9-504(3). 7 ALR4th 308.**

2. **Secured Transactions § 133 (NCI4th)— knitting machines—collateral—delay in sale**

The trial court did not err by not allowing defendant guarantors to argue that plaintiff's unexcused delay in selling collateral constituted an implied retention of the collateral pursuant to N.C.G.S. § 25-9-505(2) where there was no written notice of plaintiff's intent to retain the property in satisfaction of the debt, no conduct manifesting such intent, nor any unreasonable delay in disposal of the property.

**Am Jur 2d, Secured Transactions §§ 713-729.**

**Construction and operation of UCC § 9-505(2) authorizing secured party in possession of collateral to retain it in satisfaction of obligation. 55 ALR3d 651.**

3. **Appeal and Error § 502 (NCI4th)— disposal of collateral—instructions—no prejudicial error**

It was not reversible error for the trial court to instruct the jury that defendant guarantors had the burden of proving that plaintiff unreasonably delayed in disposing of the collateral. The defendant guarantors merely alleged error and failed to show that, absent the trial court's allegedly erroneous instruction, a different result would have obtained.

**Am Jur 2d, Appellate Review §§ 705, 711, 713, 716.**

**4. Judgment § 274 (NCI4th)— collateral—private sale—commercial reasonableness—collateral estoppel**

The trial court correctly excluded testimony about the commercial reasonableness of plaintiffs' retention of knitting machines used as collateral where the parties had entered into a consent judgment which was silent as to any finding that plaintiff should have sold the knitting machines at any time prior to the judgment and provided for the subsequent sale of the machines. The consent judgment was a final judgment as to the issue of the commercial reasonableness of the retention and a sale of the knitting machines up to the date of its entry. Plaintiff instituted a second action including the same parties when it filed a motion in the cause to determine the commercial reasonableness of the sale of the machines and the necessary elements of *res judicata* and/or collateral estoppel are present.

**Am Jur 2d, Judgments §§ 539 et seq.**

**5. Evidence and Witnesses § 2158 (NCI4th)— expert opinion—value of collateral—president of guarantor corporation—lack of requisite skills**

There was no abuse of discretion where the trial court excluded the expert opinion of defendant guarantor's president concerning the value of collateral where the witness did not demonstrate the requisite familiarity, skill, training, or education in order to allow him to offer an opinion as to the value of the collateral.

**Am Jur 2d, Witnesses §§ 725, 735, 736, 996.**

Appeal by defendants Resources Planning Corporation and Donald H. Parsons from order entered 12 September 1995 by Judge Robert P. Johnston in Catawba County Superior Court. Heard in the Court of Appeals 9 January 1997.

*Blanchfield Cordle & Moore, P.A., by Robert B. Cordle and Mary K. Mandeville, for plaintiff appellee.*

*Wilson & Iseman, L.L.P., by G. Gray Wilson, for defendant appellants Resources Planning Corporation and Donald H. Parsons.*

**NATIONSBANK OF N.C. v. AMERICAN DOUBLOON CORP.**

[125 N.C. App. 494 (1997)]

COZORT, Judge.

Defendants Resources Planning Corporation ("RPC") and Donald H. Parsons ("Parsons") were guarantors on a series of loans made by plaintiff NationsBank of North Carolina, N.A. ("NationsBank"), to defendant American Doubloon Corporation ("ADC"). In consideration of these loans, on 27 July 1988, ADC entered into a security agreement with plaintiff which granted plaintiff a security interest in all of ADC's equipment, including forty (40) Scott & Williams knitting machines.

After ADC defaulted on the loans, plaintiff instituted an action against ADC, Walter Abrams and Roger D. Good (principals of ADC who are not parties to this present action), and defendants RPC and Parsons, as guarantors of the defaulted loans (hereinafter "guarantors"). The complaint alleged default on a promissory note by ADC and resulting liability of defendant guarantors. On 23 August 1989, plaintiff obtained an entry of default and default judgment against ADC, without notice to defendant guarantors and repossessed the knitting machines. With plaintiff's consent, the knitting machines remained in the physical possession of Walter Abrams.

On 22 October 1991, plaintiff filed a motion for summary judgment against defendant guarantors on the issue of liability under the guaranty agreement. This motion was granted, and the trial court certified the matter as immediately appealable pursuant to Rule 54(b) of the Rules of Civil Procedure. Defendant guarantors appealed. The appeal was dismissed by this Court as interlocutory.

The parties reached an agreement as to the amount of the outstanding debt and entered into a consent judgment on 5 October 1992. Defendant guarantors reserved their right to appeal the trial court's grant of summary judgment on the issue of liability. The consent judgment granted defendant guarantors a credit of $30,000.00 for the value of the knitting machines and reduced their outstanding debt to plaintiff as guarantors from $303,635.99 to $273,635.99, plus costs and attorneys' fees. The judgment also provided that the knitting machines would be sold at a public sale to be held within thirty (30) days after the date of judgment. In the event that the knitting machines sold for more than $30,000.00, the excess would also be credited against the judgment. If the knitting machines sold for less than $30,000.00, plaintiff was entitled to keep that money with no credit against the judgment.

After the consent judgment was entered, defendant guarantors appealed the trial court's entry of summary judgment on the issue of liability. The attorneys for the parties informally agreed that plaintiff would not sell the knitting machines until after the final ruling on defendant guarantors' appeal.

On 19 April 1994, this Court filed an opinion affirming the decision of the trial court, *NationsBank of N.C. v. American Doubloon Corp.*, 114 N.C. App. 505, 444 S.E.2d 494 (1994) (unpublished). Defendant guarantors petitioned the North Carolina Supreme Court for review. This petition was denied by order filed 8 September 1994. *NationsBank v. American Doubloon Corp.*, 337 N.C. 695, 448 S.E.2d 530 (1994).

On 26 September 1994, plaintiff, through counsel, James M. Gaither, Jr., sold the knitting machines by private sale for $20,000.00, without notice to defendant guarantors. Defendant guarantors subsequently objected to their not receiving notice of the sale, and not having an opportunity to purchase the knitting machines. They did not then object to the fact that plaintiff had not sold the machines earlier.

Defendant guarantors made no payments on the consent judgment. Consequently, plaintiff sought to enforce the 5 October 1992 judgment in Florida and South Carolina, where both defendant guarantors have property which might have been used in satisfaction of the judgment. Defendant guarantors filed motions for relief from and defense to the consent judgment, contending that the consent judgment was not a final judgment because plaintiff had sold the knitting machines at a private sale instead of a public sale as provided in the consent judgment.

Upon discovering that a mistake had been made by selling the knitting machines at a private rather than public sale, plaintiff filed a motion in the cause, requesting that the court determine the market value of the knitting machines and if any further credit on the consent judgment was due to defendant guarantors. Defendant guarantors filed a motion pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure, requesting that the court declare the entire judgment satisfied, that sanctions be imposed against plaintiff, and that the matter be tried to a jury verdict. Judge Charles C. Lamm, Jr., by order entered 29 June 1995, denied defendant guarantors' motion for sanctions. Moreover, the trial court allowed the motion for a jury trial as to the issue of the commercial reasonableness of the private sale of

the knitting machines and other relevant issues of fact. Mr. Gaither realized that he would be a necessary witness at any trial or hearing in the case, and plaintiff obtained substitute counsel.

This matter came on for hearing before Judge Robert P. Johnston and a duly empaneled jury during the 5 September 1995 Civil Session of Catawba County Superior Court. The jury found that plaintiff did not retain the knitting machines for an unreasonably long period of time after the 5 October 1992 consent judgment and that it had sold the knitting machines in a commercially reasonable manner. On 12 September 1995, Judge Johnston entered an order, in accordance with the jury's verdict, finding that defendant guarantors were not entitled to any credits or off-sets from the previous 5 October 1992 judgment and awarding expert fees for two of plaintiff's witnesses. Defendant guarantors appeal.

[1] On appeal, defendant guarantors first argue that the trial court erred in failing to find, as a matter of law, that plaintiff was barred from obtaining a deficiency judgment where plaintiff: (1) failed to sell the collateral for more than five years after repossession; (2) sold the collateral without notice to defendant guarantors; and (3) sold the collateral at a private sale in violation of a court order requiring a public sale. Defendant guarantors contend that the appropriate sanction for plaintiff's "egregious misconduct" is to bar plaintiff bank's request for a deficiency judgment. We disagree.

N.C. Gen. Stat. § 25-9-504(1) (1995) provides that "[a] secured party after default may sell, lease or otherwise dispose of any or all of the collateral . . . ." That section further provides that "[d]isposition of the collateral may be by public or private proceedings . . . . Sale or other disposition may be as a unit or in parcels and *at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable . . . .*" N.C. Gen. Stat. § 25-9-504(3) (emphasis supplied). A creditor, when suing for deficiency judgment, bears the burden of proving that the disposition of the collateral was conducted in a commercially reasonable manner—*i.e.*, reasonable notice and commercially reasonable disposition. *Parks Chevrolet, Inc. v. Watkins*, 74 N.C. App. 719, 721, 329 S.E.2d 728, 730 (1985).

Commercial reasonableness is a jury question and does not readily lend itself to summary judgment, as reasonable minds may differ over what is commercially reasonable. *Id.* at 722, 329 S.E.2d at 734. The jury as fact finder "must consider all the elements of the sale

together." *Allis-Chalmers Corp. v. Davis*, 37 N.C. App. 114, 118, 245 S.E.2d 566, 569 (1978).

A creditor's lack of notice or failure to dispose of collateral as required by statute "raises a presumption that the collateral was worth at least the amount of the debt." *Church v. Mickler*, 55 N.C. App. 724, 728, 287 S.E.2d 131, 134 (1982). This presumption is rebuttable and may be overcome by the creditor by showing "that the collateral was sold at market value, and that the market value was less than the amount of the debt." *Id.*; *see also Hodges v. Norton*, 29 N.C. App. 193, 223 S.E.2d 848 (1976). Further, a creditor's failure to conduct the sale in a commercially reasonable manner or to give the required notice of the sale is not an absolute bar to obtaining a deficiency judgment. "Rather, the debt will be credited with the amount that reasonably could have been obtained via a commercially reasonable sale of the collateral." *Church*, 55 N.C. App. at 728, 287 S.E.2d at 134. *See also Hodges*, 29 N.C. App. 193, 223 S.E.2d 848; N.C. Gen. Stat. § 25-9-507(1) (1995).

The facts herein indicate that after ADC defaulted on the loans in question, plaintiff repossessed the knitting machines, which had been used as collateral for the loans. Thereafter, a lease/purchase agreement dated 1 March 1990 between plaintiff as owner/lessor and AmeriTech (a successor corporation to ADC, owned and controlled by Walter Abrams) as buyer/lessee provided a $10.00 buyout at the end of a thirty-six (36) month term with monthly payments of $1,428.23. Defendant guarantors contend that this lease was a disposition of the collateral pursuant to § 25-9-504(1) of the General Statutes and insist that they were not given notice of this transaction. We note that, at the time the 5 October 1992 consent judgment was entered, defendant guarantors were aware of this transaction, and yet no mention of the lease/purchase agreement's disposition of the property was made in the judgment.

Upon the failure of AmeriTech to make full payment under the 1 March 1990 lease/purchase agreement, plaintiff recovered possession of the knitting machines and subsequently sold them, without notice to defendant guarantors, at a private sale for the sum of $20,000.00, inconsistent with the 5 October 1992 consent judgment's requirement of public sale.

This sequence of events, however, does not, in our view, bar plaintiff from obtaining a deficiency judgment. Well-settled law provides that the failure to give notice and/or to dispose of collateral in

a commercially reasonable manner results in: (1) a presumption that the collateral was worth at least the amount of the debt; and (2) the amount that could have reasonably been obtained from a commercially reasonable sale of the collateral being credited to the debt. *Church*, 55 N.C. App. at 728, 287 S.E.2d at 134; *Hodges*, 29 N.C. App. 193, 223 S.E.2d 848; N.C. Gen. Stat. § 25-9-507(1). There is no support for defendant guarantors' argument that plaintiff's actions bar all rights to a deficiency judgment, or suggest an intent to retain the collateral in full satisfaction of the debt as a matter of law under § 25-9-505. Accordingly, this argument fails.

Defendant guarantors argue, in the alternative, that if the appropriate remedy for plaintiff's misconduct is a presumption that the value of the collateral equals the amount of the debt, the secured creditor may overcome the presumption only by evidence that the value of the collateral was less than the amount of the debt as of the date of *repossession*. This argument also fails.

Defendant guarantors cite an Idaho case, *Mack Financial Corp. v. Scott*, 606 P.2d 993 (Idaho 1980), which we do not find controlling in the instant case, and the North Carolina case, *Hodges v. Norton*, 29 N.C. App. 193, 223 S.E.2d 848, which in no way indicates that the fair market value of the collateral should be assessed as of the time of *repossession*. In fact, *Hodges* makes no mention of the time of valuation of the property. Moreover, there was a consent judgment entered on 5 October 1992, granting defendant guarantors a credit of $30,000.00 for the value of the knitting machines. This consent judgment being a final judgment, having disposed of the issue of the value of the property, is binding upon the parties herein.

[2] Defendant guarantors next argue that the trial court erred by failing to allow them to argue that plaintiff's "unexcused delay" in selling the collateral constituted an implied retention of the collateral under N.C. Gen. Stat. § 25-9-505(2) in satisfaction of the debt. We cannot agree.

N.C. Gen. Stat. § 25-9-505 (1995) provides in pertinent part:

(2) In any other case involving consumer goods or any other collateral a secured party in possession may, after default, propose to retain the collateral in satisfaction of the obligation. Written notice of such proposal shall be sent to the debtor if he has not signed after default a statement renouncing or modifying his rights under this subsection.

Defendant guarantors call our attention to the three views regarding whether a written notice of intention to retain collateral in satisfaction of a debt is required:

(1) [T]he written notice required by the Code is mandatory;

(2) Retention in satisfaction of the debt can be shown by conduct manifesting such intention; and

(3) Retention in satisfaction of the debt can be established by an unreasonably long delay in disposing of the collateral.

9A, Ronald A. Anderson, *Anderson on the Uniform Commercial Code*, 9-505:29 (3d ed. 1994). North Carolina courts have not yet taken a position on this issue, and we find no need to do so on the unique facts presented herein.

In the instant case, the facts show that plaintiff made an effort as early as two and one-half (2½) months following repossession of the knitting machines to sell the machines through a lease/purchase agreement with AmeriTech, the successor corporation to ADC. Thereafter, plaintiff entered into a consent judgment with defendant guarantors agreeing to sell the knitting machines within thirty (30) days after the entry of judgment. Subsequently, an informal agreement was made to delay the sale of the knitting machines until after the appeals process was complete, as defendant guarantors were contesting the validity of their liability. Under these facts, we find no written notice of plaintiff's intent to retain the property in satisfaction of the debt, no conduct manifesting such intent, nor any unreasonable delay in disposal of the property. We overrule defendant guarantors' argument.

[3] Defendant guarantors also argue that the trial court erred in instructing the jury that they had the burden of proving that plaintiff unreasonably delayed in disposing of the collateral. We find no reversible error. It is not enough for defendant guarantors to merely allege error, they must also show that absent the trial court's allegedly erroneous instruction, a different result would have obtained. *Lawing v. Lawing*, 81 N.C. App. 159, 162, 344 S.E.2d 100, 104 (1986) (citing N.C. Gen. Stat. § 1A-1, Rule 61); *Medford v. Davis*, 62 N.C. App. 308, 302 S.E.2d 838, *disc. review denied*, 309 N.C. 461, 301 S.E.2d 365 (1983)). As defendant guarantors fail to make such a showing and our review of the record reveals no likely change in results by virtue of the alleged error, this assignment of error is overruled.

NATIONSBANK OF N.C. v. AMERICAN DOUBLOON CORP.

[125 N.C. App. 494 (1997)]

**[4]** Defendant guarantors next argue that the trial court erred by excluding evidence that plaintiff's failure to sell the collateral from the time of repossession of the collateral (23 August 1988) until the entry of the consent judgment finding defendant guarantors liable on the promissory note (5 October 1992) was commercially unreasonable. Specifically, defendant guarantors take issue with the trial court's use of the doctrines of res judicata and collateral estoppel to enter an order prohibiting them from presenting

> any evidence to the jury regarding any delay in selling the knitting machines prior to the entry of Judgment, or any failure to repair the machines prior to the entry of the Judgment, and arguing to the jury that such delay or failure was commercially unreasonable.

We overrule this argument.

Res judicata, or claim preclusion, prevents a party, or one in privity with that party, from bringing a suit twice on the same claim or cause of action when a final judgment on the merits has been entered in the first suit. *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 413-14, 474 S.E.2d 127, 128 (1996) (citing *Thomas M. McInnis & Assoc. v. Hall*, 318 N.C. 421, 428-29, 349 S.E.2d 552, 556-57 (1986)). Collateral estoppel, or issue preclusion, " 'prevents [the] relitigation of issues actually litigated and necessary to the outcome of the prior action between the parties or their privies.' " *Id.* at 414, 474 S.E.2d at 128 (quoting *McGinnis & Assoc.*, 318 N.C. at 428, 349 S.E.2d at 557). Consequently, collateral estoppel may be raised in a subsequent action although that action may involve a claim or cause of action different from the first. *Tar Landing Villas v. Town of Atlantic Beach*, 64 N.C. App. 239, 242, 307 S.E.2d 181, 184 (1983).

In the case below, the parties herein entered into a consent judgment which is silent as to any finding that plaintiff should have sold the knitting machines at any time prior to the entry of the judgment. In fact, the judgment expressly provided that the knitting machines would be sold within thirty (30) days after entry of judgment. Plaintiff later sold the collateral at a private sale. Thereafter, plaintiff filed a motion in the cause to determine the commercial reasonableness of the sale.

We find any testimony about the commercial reasonableness of plaintiff's retention of the collateral up to the time of the entry of the consent judgment to be barred by the doctrines of res judicata and

collateral estoppel. The consent judgment, to which defendant guarantors were parties, was a final judgment as to the issue of the commercial reasonableness of the retention and sale of the knitting machines up to the date of its entry. Further, when plaintiff filed a motion in the cause to determine the reasonableness of the subsequent private sale of the knitting machines, a second action including the same parties was instituted. As such, the necessary elements for the doctrines of res judicata and/or collateral estoppel are present, and we find no error in their application by the trial court.

**[5]** Defendant guarantors next argue that the trial court erred in excluding the expert opinion of their president concerning the value of the collateral. Rule 702 of the North Carolina Rules of Evidence provides:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C.R. Evid. 702. The determination of whether a witness has the requisite level of skill to qualify as an expert witness is ordinarily within the exclusive province of the trial judge, and a finding by the trial judge that a witness does not possess the requisite skill will not be reversed on appeal unless there is no evidence to support it. *State v. Parks*, 96 N.C. App. 589, 592, 386 S.E.2d 748, 750 (1989).

In the instant case, the facts tend to show that defendant RPC's President, Allan Kidston, was not a professional appraiser. In fact, his educational background was in Biology and Animal Sciences. Mr. Kidston's only expertise in appraisal was the "appraisal" of the knitting machines at issue and thirty-eight (38) other knitting machines also located at ADC. His determination of the value of the knitting machines was based on a 1985 letter from Catawba Valley Machinery Company, which indicated the value of the knitting machines *if* modified in a certain way and *if* they were able to operate in a production capacity. Mr. Kidston did not demonstrate the requisite familiarity, skill, training, or education in order to allow him to offer an opinion as to the value of the knitting machines. As such, we find no abuse of discretion in the trial court's decision to exclude the opinion of Mr. Kidston, and defendant guarantors' arguments to the contrary fail.

We have reviewed defendant's remaining assignments of error and find no error.

No error.

Judges JOHN and McGEE concur.