**Raymond A. INGRAM, Plaintiff,**

v.

**Andrew M. CUOMO, Secretary of the United States Department of Housing and Urban Development, Defendant.**

**No. 1:97CV01249.**

United States District Court,·
M.D. North Carolina.

May 5, 1999.

P. Wayne Robbins, Pinehurst, NC, for plaintiff.

Gill P. Beck, Office of U.S. Attorney, Greensboro, NC, for defendant.

## MEMORANDUM OPINION

BEATY, District Judge.

This matter is before the Court on Defendant's Motion to Dismiss or In The Alternative For Summary Judgment [Document # 6], and Plaintiff's counter Motion for Summary Judgment [Document # 10]. Plaintiff Raymond A. Ingram ("Plaintiff") commenced this action in North Carolina Superior Court after his tax refunds were seized pursuant to 31 U.S.C. § 3720A. The refunds were withheld based on a determination by the United States Department of Housing and Urban Development ("HUD") that Plaintiff owed a past due, legally enforceable debt to HUD. Defendant removed the case to this Court. The facts of this case are not in dispute. For the reasons discussed below, Defendant's Motion For Summary Judgment is granted, Plaintiff's Motion for Summary Judgment is denied, and Plaintiff's claims are dismissed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1981, Plaintiff and his then-wife, Dorothy Ingram ("Ms.Ingram"), purchased a mobile home from Cline Mobile Homes. Plaintiff and Ms. Ingram financed $17,249.00 of the purchase price of the mobile home pursuant to a Retail Installment Contract Security Agreement with Cline Mobile Homes. The Security Agreement was immediately assigned to Green Tree Acceptance, Inc. ("Green Tree"), which provided the financing. The loan was insured by HUD pursuant to Title I of the National Housing Act, 12 U.S.C. § 1703.

In 1988, Plaintiff and Ms. Ingram separated. In their Separation Agreement, Ms. Ingram was given possession of the mobile home and assumed the payments. In 1989, Ms. Ingram failed to make the payments. Because of Ms. Ingram's default, Green Tree began an action in North Carolina Superior Court against Plaintiff and Ms. Ingram for possession of the mobile home and for damages. Ms. Ingram allowed repossession, and the mobile home was sold at a private sale. The mobile home was appraised at $7,357.00 without repairs, and was sold for $8,500.00. Following the sale, a debt of $7,485.21 remained.[1] Pursuant to the provisions of the National Housing Act, Green Tree collected on the deficiency from HUD and assigned its interest to HUD. Green Tree subsequently dismissed its suit against Plaintiff and Ms. Ingram without prejudice.

In 1993, Plaintiff received notice that HUD intended to intercept any tax refund due to Plaintiff in order to satisfy the debt Plaintiff owed to HUD, pursuant to the offset provisions of the Deficit Reduction Act of 1984, 31 U.S.C. § 3720A.[2] In 1993, and again in 1994, Plaintiff, through his attorney, appealed the offset decision to a HUD administrative judge. In both appeals, the HUD administrative judge found that the offset was proper because the debt was past due and legally enforceable. As a result, HUD has received from the Internal Revenue Service Plaintiff's tax refunds totaling $1,915.71.

Plaintiff has now brought the present action challenging both HUD's decision to offset his tax refund and HUD's determination that the debt was past due and legally enforceable. Before addressing the merits of the parties' cross-motions for summary judgment, the Court will address the procedural issues raised in Defendant's Motion to Dismiss.

## II. MOTION TO DISMISS

■ Defendant contends that Plaintiff's claims should be dismissed because Plaintiff has failed to allege a waiver of sovereign immunity. The United States is immune from suit except as it consents to be sued. *See United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580, 588 (1983). A party suing the Federal Government, its agencies, or its officers must allege both the basis for the Court's jurisdiction and the specific statute containing the waiver of the Government's immunity from suit. *Thomas v. Pierce*, 662 F.Supp. 519, 523 (D.Kan.1987); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1212 (2d ed.1990). Defendant correctly argues that Plaintiff's failure to identify the basis under which he is proceeding "places a heavy burden upon HUD to speculate as to which waiver, if any, Plaintiff believes may apply to the instant suit." (Def.'s Br. at 5.)

However, other courts faced with similar challenges to offsets under 31 U.S.C. § 3720A have noted that even where the plaintiff failed to plead a waiver of sovereign immunity, "it is nonetheless clear that the United States has waived sovereign immunity for this type of action through the Administrative Procedure Act." *See*

---

1. In 1995, Plaintiff obtained a Judgment against Ms. Ingram for breach of the Separation Agreement in the amount of $12,485.21, which included the $7,485.21 deficiency on the mobile home loan.

2. Under the Federal Deficit Reduction Act of 1984, "[a]ny Federal agency that is owed by a person a past-due, legally enforceable debt ... shall ... notify the Secretary of the Treasury at least once each year of the amount of such debt.... Upon receiving notice from any Federal agency that a named person owes to such agency a past-due legally enforceable debt, the Secretary of the Treasury shall determine whether any amounts, as refunds of Federal taxes paid, are payable to such person. If the Secretary of the Treasury finds that any such amount is payable, he shall reduce such refunds by an amount equal to the amount of such debt, pay the amount of such reduction to such agency, and notify such agency of the individual's home address." 31 U.S.C. § 3720A(a)–(c).

*Blake v. Cisneros,* 837 F.Supp. 834, 836 (S.D.Tx.1993). The Administrative Procedure Act ("APA") specifically allows suits against agencies and officers of the United States for review of agency action, and provides that such a claim "shall not be dismissed nor relief therein be denied on the ground that it is against the United States." 5 U.S.C. § 702.[3]

■ Moreover, other courts have allowed similar suits based on a statutory waiver of immunity that gives an agency the ability to "sue and be sued." *See, e.g., Thomas v. Bennett,* 856 F.2d 1165 (8th Cir.1988) (allowing challenge to tax offset against Department of Education using "sue and be sued" clause); *Kitchen v. United States Department of Education,* 1998 WL 167325 (S.D.N.Y.1998) (same). With regard to HUD, Congress has provided that the Secretary of HUD, in carrying out the provisions of the National Housing Act, may "sue and be sued" in his official capacity. 12 U.S.C. § 1702. Because sufficient waivers of immunity exist under either the APA or the "sue and be sued" clause, this Court will deny Defendant's motion to dismiss Plaintiff's claims for failure to plead a waiver of sovereign immunity.

## III. MOTIONS FOR SUMMARY JUDGMENT

Alternatively, Defendant has moved for summary judgment, contending that HUD's decision to offset Plaintiff's tax refund was proper based on the governing statutes and the evidence presented. In response, Plaintiff has also moved for summary judgment, contending that HUD cannot collect his tax refunds without first obtaining a deficiency judgment in state court.

Generally, summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, the Court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Va.,* 67 F.3d 53, 56 (4th Cir.1995), *cert. denied,* 516 U.S. 1159, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996). In this case, the facts are undisputed. Therefore, the motions for summary judgment can be resolved by considering the parties' arguments in light of the applicable law.

### A. Governing Statutes

HUD insures loans for mobile homes pursuant to Title I of the National Housing Act. 12 U.S.C. § 1702 *et. seq.* Pursuant to that Act, a lender may assign a debt to HUD after a borrower defaults on an insured loan. HUD has promulgated regulations regarding the collection of amounts owed to HUD, including "amounts owed on loans assigned to the United States by insured lenders as the result of defaults by borrowers." 24 C.F.R. § 201.60. HUD's regulations govern the determination of the amount owing and the amount to be credited for sale of a repossessed home. *See* 24 C.F.R. §§ 201.53–.55 (providing for calculation of the amount to be credited after foreclosure based on the best price obtainable); 24 C.F.R. § 201.61 (providing that the debt is the judgment amount if a judgment was obtained, but if no judgment was obtained, the debt is the amount of the unpaid loan obligation plus interest and costs incurred).

Having determined the amount of the debt, HUD may then begin the process of referring the debt to the IRS for collection of the debtor's tax refund to satisfy the debt. *See* 31 U.S.C. § 3720A(a). Before referring a debt to the IRS, HUD must

---

**3.** Under the APA, courts may review agency action to determine if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2). The Court notes that Defendant ultimately concedes that this Court may review HUD's actions under the APA.

first establish that the debt is "past due and legally enforceable," and must then provide the debtor with notice of the proposed IRS offset. *See* 24 C.F.R. § 17.153. If the debt is disputed, the debtor has a right to present evidence. An administrative judge from the HUD Board of Contract Appeals must then weigh the evidence to determine whether the debt is delinquent and enforceable. *Id.* If the debt is determined to be past-due and legally enforceable, it is referred to the IRS for offset collection. *See id.;* 31 U.S.C. § 3720A.

B.   Analysis

In the present case, HUD initially determined that Plaintiff owed a debt to HUD that was past due and legally enforceable, based on the amount that Plaintiff and Ms. Ingram still owed on the mobile home loan which had been assigned to HUD as a result of their default. Therefore, HUD sent Plaintiff a notice of intent to collect the debt by IRS Tax Refund Offset. Plaintiff, through his attorney, sent a letter challenging that action. Upon receiving Plaintiff's objection, HUD submitted its evidence of the debt to an administrative judge. The evidence included affidavits of a HUD director indicating the amount owed by Plaintiff according to the Debt Management Collection System records. According to the affidavits, HUD calculated the amount due on Plaintiff's loan according to the applicable regulations as $6,104.99 principal and $1,726.98 interest in September 1993. In August 1994, after receiving some payment, HUD calculated Plaintiff's remaining debt to HUD as $4,986.34 unpaid principal and $99.72 unpaid interest, according to the affidavits submitted to the administrative judge. HUD also provided copies of the loan agreement with Plaintiff's signature, and copies of the assignment from Green Tree. In response, Plaintiff did not present any evidence to show that the debt was not legally enforceable. Based on the evidence presented, the administrative judge determined that he had sufficient evidence

on which to find that the debt was past due and legally enforceable. Therefore, the administrative judge concluded that HUD could properly refer the debt to the IRS for tax refund offset.

Plaintiff's primary contention in the present action is that the debt is not a "legally enforceable debt" because HUD must obtain a deficiency judgment in state court following foreclosure or resale in order for the debt to become a "past-due legally enforceable debt." Plaintiff apparently wishes to assert the defense recognized in North Carolina deficiency actions which allows debtors to challenge the reasonableness of a private sale. *See North Carolina National Bank v. Burnette*, 297 N.C. 524, 256 S.E.2d 388 (1979). Following such a challenge, the lender must either establish the reasonableness of the sale, or must credit the debtor with the additional amount that could have been obtained from a commercially reasonable sale of the property, with a rebuttable presumption that the property was worth the amount of the debt. *See NationsBank of North Carolina, N.A. v. American Doubloon Corp.*, 125 N.C.App. 494, 500, 481 S.E.2d 387, 390–91, *rev. denied,* 346 N.C. 282, 487 S.E.2d 551 (1997).

■ After considering Plaintiff's arguments in light of the applicable statutes, it is clear that Plaintiff's contentions are without merit. The Court notes first that the tax offset provisions of 31 U.S.C. § 3720A do not require that a debt be reduced to judgment before offsetting is allowed. In fact, the regulations governing tax offsetting contemplate that the debt will not have been reduced to judgment. *See, e.g.,* 26 C.F.R. § 301.6402–6(c)(1) (providing a limitations period for offsetting for debts that have not been reduced to judgment). Instead, the statutory provisions require only that the debt be "past-due" and "legally enforceable." 31 U.S.C. § 3720A(a). Contrary to Plaintiff's assertions, HUD need not obtain a deficiency judgment in order for the debt

to be "legally enforceable." A "legally enforceable debt" is a debt that is "recoverable in a court of law, as debt on a bill of exchange, a bond, or a simple contract." *Black's Law Dictionary* (6th ed.1990). "In its most basic sense, 'legally enforceable' means that a party could go to court and obtain a judgment on the debt." *Hurst v. United States Dep't of Educ.*, 695 F.Supp. 1137, 1139 (D.Kan.1988), *aff'd*, 901 F.2d 836 (10th Cir.1990). In this case, Plaintiff owes a debt to HUD that is computed according to the applicable regulations and is collectable in court pursuant to, *inter alia*, the National Housing Act, 12 U.S.C. § 1702, *et. seq.*, the Single Family Mortgage Foreclosure Act of 1994, 12 U.S.C. § 3751, *et. seq.*, and the Federal Claims Collection Act, 31 U.S.C. § 3701, *et. seq.* Thus, a deficiency judgment is not required in order for the debt to be "legally enforceable" and subject to the tax offsetting provisions of 31 U.S.C. § 3720A.

Plaintiff does not present any support for his contention that despite these federal statutes and regulations, HUD must nevertheless obtain a deficiency judgment before proceeding with tax offsetting. Moreover, Plaintiff has not made any allegations or presented any evidence to show that the debt would not be legally enforceable in an action brought by HUD under either state or federal law.[4] Thus, based on the evidence presented, the Court finds that the debt in this case is legally enforceable by HUD. The Court therefore concludes that HUD properly determined that it was entitled to an offset of Plaintiff's tax refund to recover the debt.

In addition to the contentions discussed above, Plaintiff also contends that HUD was not a party to the contract and has no greater rights than Green Tree. Specifically, Plaintiff contends that since he did not realize that HUD insured the loan, and since HUD was not a party to the contract, the federal statutory provisions should not apply to him. According to Plaintiff, North Carolina law controls collection of the debt, and HUD has only the collection rights of Green Tree under a subrogation theory. Thus, Plaintiff disputes the notion that HUD can collect his tax refund, since Green Tree did not have a right to collect his tax refunds.

■ However, the Court finds that Plaintiff is bound by the federal statutory provisions, even though he was not specifically informed at the time he obtained the loan that he would be liable to HUD if he defaulted. To obtain financing, Plaintiff and Ms. Ingram completed a credit application on a HUD form which indicated that the application was submitted "to obtain credit under provisions of Title I of the National Housing Act." Furthermore, the Mobile Home Warranty signed by Plaintiff provided that the warranty was provided to "induce the Secretary of Housing and Urban Development to insure a loan to such Purchaser(s) under the National Housing Act." Moreover, Plaintiff and Ms. Ingram received the benefit of federal insurance because they were able to obtain the mobile home loan through a HUD program. Again, Plaintiff has not presented any basis for his contention that he should not be bound by the federal statutory provisions after he obtained the benefit

---

4. Specifically, the Court notes that Plaintiff himself states that he received a notice dated January 7, 1991 from Green Tree notifying him of the upcoming private sale and his redemption right. *See* N.C.G.S. § 25–9–504 (1995) (requiring reasonable notice to debtors before private sales). Moreover, Plaintiff provides evidence to establish that the mobile home was sold for $8,500.00, well above the "as is" appraised value of $7,357.00. Thus, HUD has already established the value of the property based on the appraisal, and credited Plaintiff with the higher amount obtained at the sale. This evidence provides substantial support for the conclusion that the sale was commercially reasonable and that HUD would be entitled to recover the full amount of the deficiency. Thus, even under state law, the debt is "legally enforceable" and subject to the federal statutory provisions governing offsets of tax refunds. *See* 31 U.S.C. § 3720A. Plaintiff has presented no evidence or argument to challenge this conclusion.

of a federally insured loan. Therefore, the Court concludes that Plaintiff is bound by the federal statutes and regulations that control HUD's collection rights, including the offset provisions of 31 U.S.C. § 3720A.[5]

## IV. CONCLUSION

The Court finds that the facts of this case are not in dispute, and summary judgment is therefore appropriate. Defendant has established that Plaintiff owes a past due and legally enforceable debt to HUD. Plaintiff has presented no evidence or authority to show that the debt would not be legally enforceable under either federal or state law. The Court concludes that the debt is legally enforceable, and that HUD properly followed the applicable federal statutes and regulations in seeking offset of Plaintiff's tax refund. Therefore, Defendant's Motion for Summary Judgment [Document # 6] is GRANTED, Plaintiff's Motion for Summary Judgment [Document # 10] is DENIED, and Plaintiff's claims are dismissed.

An Order and Judgment consistent with this Memorandum Opinion will be filed contemporaneously herewith.

---

5. In his affidavit, Plaintiff contends that some of the tax refunds seized by HUD actually belonged to his current wife, Marguerite W. Ingram ("Ms. Marguerite Ingram"). Plaintiff contends that he and Ms. Marguerite Ingram filed joint returns for the years in question, and that for 1996 he had no taxable income. Thus, Plaintiff asserts that the tax refund seized in 1996 belonged to Ms. Marguerite Ingram and was improperly retained. As to this contention, the Court notes that the regulations of the Internal Revenue Service provide that:

(1) In the case of an offset from a refund based on a joint return, the Service shall issue a notice in writing to any person who may have filed a joint return with the taxpayer, including the amount and date of any offset and the steps which the non-debtor spouse may take in order to secure his or her proper share of the refund (unless the non-debtor spouse has already taken these steps prior to offset).

(2) If the person filing the joint return with the taxpayer owing the past-due, legally enforceable debt takes appropriate action to secure his or her proper share of a refund from which any offset was made, the Service shall pay the person his or her share of the refund and shall deduct that amount from amounts payable to the agency.

26 C.F.R. § 301.6402–6(i). Based on these regulations, Ms. Marguerite Ingram may be able to recover from the IRS her share of the refund from which an offset was made. However, it is up to Ms. Marguerite Ingram to take appropriate action with the IRS to establish the amount of her share.