IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 28, 2012 Session

## VFS LEASING v. BRIC CONSTRUCTORS, LLC ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 35784     Jeffrey S. Bivins, Judge**

**No. M2011-01894-COA-R3-CV - Filed June 28, 2012**

Secured party brought action against debtors and guarantors, seeking recovery of deficiency which remained after sale of collateral. The trial court granted summary judgment to secured party.  Because genuine issues of material fact preclude summary judgment, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded.**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S.,  and RICHARD H. DINKINS, J., joined.

Geoffrey Coston, Franklin, Tennessee, for the appellants, Bric Constructors, LLC and Patricia A. McIntosh.

Courtney Hunter Gilmer and Kenneth David Waddell, Nashville, Tennessee, for the appellee, VFS Leasing.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

The appellant, Patricia McIntosh ("Ms. McIntosh"), is the principal member of Bric Constructors, LLC ("Bric"), a grading and utility contracting business based in Williamson County, Tennessee.  Bric and Ms. McIntosh entered into two lease agreements, Lease A and Lease B, with VFS Leasing Co. ("VFS") for Volvo Articulated Haulers.  Lease A and Lease

B provide that Bric and Ms. McIntosh, respectively, shall be liable for all costs and expenses, together with attorney fees,[1] incurred by VFS to enforce the terms of Leases A and B.

## I. *Undisputed facts*[2]

Each lease contains a choice of law provision stating that "[t]his Agreement . . . shall be governed by the substantive (and not choice of law or conflicts) laws of the State of North Carolina." Upon Bric's and Ms. McIntosh's default[3] on Lease A and Lease B, VFS repossessed and, following notice[4] to Bric and Ms. McIntosh, sold the following equipment: (1) 2005 Volvo A35D articulated hauler, serial number ending in 2034; (2) 2005 Volvo A35D articulated hauler, serial number ending in 2035; (3) 2007 Volvo A35 articulated hauler, serial number ending in 2380; and (4) 2007 Volvo A35 articulated hauler, serial number ending in 2352 (collectively "the leased units").

VFS sells repossessed equipment as follows: If VFS does not have recourse against the original selling dealer, VFS, as a courtesy, notifies the original selling dealer of the upcoming sale. Before the sale date, VFS sends e-mails advertising the sale of the equipment to all Volvo Rents (VRI) and Volvo Construction Equipment Services (VCES). The equipment is then placed for sale through VFS's exclusive Preferred Offering website accessed through IronPlanet.com ("the Preferred Offering site"). The remarketing department establishes three prices based on its assessment of current market conditions: a starting price, a reserve price, and a "win it now" price. The starting price is the lowest price at which dealers can bid and is designed to entice bidding. The reserve price is the lowest price that VFS will accept and it is hidden from all dealers. The "win it now" price is the price at which dealers may purchase the equipment immediately without waiting for the

---

[1] Bric and Ms. McIntosh admit that "VFS Leasing has incurred attorneys' fees and costs in the amount of $14,727.60 which it is entitled to recover from [Bric and Ms. McIntosh] under the terms of Lease A and [L]ease B."

[2] Because the trial court decided this case at the summary judgment stage, we take our statement of the facts from the undisputed facts submitted by VFS and admitted by Bric and Ms. McIntosh for purposes of summary judgment.

[3] Bric's and Ms. McIntosh's default and liability to VFS are not in dispute and are not issues on appeal.

[4] VFS sent Bric and Ms. McIntosh via certified mail notices of sale dated September 12, 2008, that read, "You are hereby notified that there has been a default in the payment pursuant to a Fixed Purchase Option signed or guaranteed by you . . . ." and "You are further notified that the above described property will be sold at a private sale after 09/22/2008." The signed certified mail receipts are in the record. We discuss in greater detail the sufficiency of the notice below.

auction results. If, at the auction's conclusion, the high bid equals or exceeds the reserve price, the equipment is sold. If the reserve price has not been met at the auction's conclusion but a dealer has placed a bid, the equipment may be sold to that dealer. In exchange for maintaining the Preferred Offering site, Iron Planet charges a service fee in the amount of 3% of the equipment's final selling price.

If the equipment is not sold via the Preferred Offering site, it is offered for sale through Iron Planet's public auction site accessed via IronPlanet.com ("the auction site"). Iron Planet has approximately 450,000 registered users in connection with its auctions and has conducted internet auctions for more than ten years. Iron Planet advertises its auctions on its website, as well as in trade journals and publications. Potential buyers can view equipment offered for sale through the auction site via an internet preview offered before the auction's start. An auction for each item of equipment begins at a predetermined advertised start time. Iron Planet sets a starting price to entice bidding, and the equipment is sold for the highest bid above this starting price. Each item is allotted six minutes, and any successful bid placed in the last three minutes of an auction will extend the auction by three minutes. In exchange for maintaining the auction site, Iron Planet charges a service fee in the amount of 7% of the equipment's final selling price.

Here, each leased hauler was repossessed on September 10, 2008, inspected on September 18, 2008, and determined to have a certain number of hours of use. Beginning on October 10, 2008, each repossessed hauler was offered for a certain price on the Volvo Preferred Offering site, but no offers were received. On October 22, 2008, each hauler was assigned a minimum bid and was listed on Iron Planet's auction site. On October 30, 2008, each hauler was advertised for sale and auctioned on Iron Planet's worldwide internet sale via the auction site. The auction results for the four haulers were as follows: 1 bid, sale price of $194,000; 39 bids, sale price of $192,000; 33 bids, sale price of $170,000; and 18 bids, sale price of $142,000. The October 30, 2008 Iron Planet auction site sale during which the four haulers were sold involved the sale of 10.98 million dollars of equipment. At the time of the sale, Iron Planet had 415,000 registered users who had access to the sale. The sale had over 1,000 different bidders, and 52% of the items received international bids. The auction had 12,588 viewers/prospective buyers.

II. *Procedural History*

In its April 13, 2009 complaint against Bric and Ms. McIntosh, VFS asserted claims for breach of contract under Lease A and Lease B and sought a total deficiency balance of $649,375.89 "plus interest at 18% per annum from the date of default and additional costs of collection and litigation, including reasonable legal fees . . . ." Bric and Ms. McIntosh's answer raised affirmative defenses, including that VFS failed to notify them of the date, time,

and place of the October 30, 2008 public sale and that VFS "failed to conduct the public 'on-line' auction of [the haulers] in a commercially reasonable manner therefore resulting in a sale of the property for less than Fair Market Value."

On August 12, 2009, VFS filed its first motion for summary judgment. Bric and Ms. McIntosh argued in response that there were material disputed facts, namely, that VFS sold the repossessed haulers in a commercially unreasonable manner and failed to give proper notice of the sale. Initially, the trial court granted summary judgment in VFS's favor by order entered October 29, 2009. Pursuant to Tenn. R. Civ. P. 52.02 and 59, Bric and Ms. McIntosh filed a motion to alter and amend that included Ms. McIntosh's affidavit and supporting exhibits. By order entered May 7, 2010, the trial court granted the motion and vacated its prior grant of summary judgment on the issue of damages, concluding that "it did err in its previous determination that [Bric and Ms. McIntosh] bore the burden of proof on [the issues of commercial reasonableness and proper notice]." VFS filed a second motion for summary judgment on the remaining issue of damages and supported it with the affidavit of Stephen Miller, the auction house manager, and the affidavit of Heather Cooke, VFS's Litigation and Bankruptcy Specialist. After a hearing and by order entered July 29, 2011, the trial court granted summary judgment to VFS on the remaining issue of damages, awarding VFS a $939,049.87 judgment plus pre-judgment and post-judgment interest, and finding "that the undisputed facts establish that VFS properly followed North Carolina law in its disposition of the repossessed collateral in this case" and "that no genuine issue of material fact exists on the issue of damages."

Bric and Ms. McIntosh appeal.

STANDARD OF REVIEW

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Blair*, 130 S.W.3d at 763. Accordingly, we must review the record de novo and make a fresh determination of whether any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993).

The moving party has the ultimate burden of persuading the court that "there are no disputed, material facts creating a genuine issue for trial . . . and that he is entitled to judgment as a matter of law." *Byrd,* 847 S.W.2d at 215. If the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to

show that a genuine issue of material fact exists. *Id.* To shift the burden of production to the nonmoving party who bears the burden of proof at trial, the moving party must either: "(1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial." *Hannan*, 270 S.W.3d at 8-9.[5] It is not enough for the moving party to "merely point to omissions in the nonmoving party's proof and allege that the nonmoving party cannot prove the element at trial." *Id*. at 10. "Similarily, the presentation of evidence that raises doubts about the nonmoving party's ability to prove his or her claim is also insufficient." *Martin*, 271 S.W.3d at 84.

If the moving party fails to satisfy its initial burden of production, the court should dismiss the motion for summary judgment. *Hannan*, 270 S.W.3d at 5. We consider the evidence presented in support of and in opposition to a motion for summary judgment in the light most favorable to the nonmoving party, resolve all inferences in that party's favor, and discard all countervailing evidence. *Godfrey v. Ruiz,* 90 S.W.3d 692, 695 (Tenn. 2002); *Byrd,* 847 S.W.2d at 210-11. The "grant of summary judgment is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Sykes v. Chattanooga Hous. Auth.,* 343 S.W.3d 18, 26 (Tenn. 2011) (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)).

ANALYSIS

*Commercial Reasonableness*

Pursuant to Article 9 of the Uniform Commercial Code as adopted by North Carolina, "[a]fter default, a secured party may sell, lease, license, or otherwise dispose of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing" and "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." N.C. Gen. Stat. Ann. § 25-9-610(a) and (b). In a non-consumer transaction in which the amount of a deficiency is at issue, once "the secured party's compliance [with the Article 9 rules governing default[6]] is placed in issue, the secured party has the burden of establishing that the . . . disposition . . . was conducted in accordance with [those rules]." N.C. Gen. Stat.

---

[5] Tennessee Code Annotated § 20-16-101 (2011), a provision that is intended to replace the summary judgment standard adopted in *Hannan*, is inapplicable to this case. *See Sykes v. Chattanooga Hous. Auth.,* 343 S.W.3d 18, 25 n.2 (Tenn. 2011) (noting that section 20-16-101 is only applicable to actions filed on or after July 1, 2011).

[6] N.C. Gen. Stat. Ann. § 25-9-601 *et seq*.

Ann. § 25-9-626(a); *see also Arden Equip. Co., Inc. v. Rhodes*, 285 S.E.2d 874, 875 (N.C. Ct. App. 1982) ("In order to recover a deficiency judgment against the defendants, the burden of proof is on the plaintiff to show the sale of the secured chattel was commercially reasonable.") and *VFS Leasing Co. v. G.F. Kelly, Inc.*, No. 3:06cv638-SRW, 2007 WL 2069842, at *6 (M.D. Ala., July 13, 2007) (applying North Carolina law). Thus, to be entitled to summary judgment, VFS must point to undisputed facts that establish that the sale of the haulers, in every aspect, was performed in a commercially reasonable manner. *Hannan*, 270 S.W.3d at 9 n.6.

In support of its motion for summary judgment on the issue of damages, VFS offered Stephen Miller's and Heather Cooke's affidavits. Mr. Miller's affidavit details VFS's process of selling repossessed equipment (*see supra* section I); the only other statements it contains are:

> 1. I am of lawful age, and the matters stated herein are of my own personal knowledge and based on the books and records maintained by me in the ordinary course of business. I am the manager of the department of Plaintiff VFS Leasing Co. ("VFS Leasing") responsible for appraising, authorizing, reconditioning, and selling repossessed equipment and am responsible for the sale of the equipment at issue in this matter.

> 9. While every sale of an item of collateral is unique, the sale of repossessed collateral, either through the Websites, via the Preferred Offering Site, via the [Iron Planet] Auction Site, or via the traditional auction process, typically commands fair market value and therefore a commercially reasonable price.

Ms. Cooke's affidavit includes the following statements, as relevant to this appeal:

> 1. . . . I am a Litigation and Bankruptcy Specialist for Plaintiff VFS Leasing Co. ("VFS Leasing") and am [*sic*] have knowledge regarding the administration and supervision of the leases at issue.

> 7. Prior to the sale of the Leased Units, VFS Leasing properly provided notice of the sale via certified mail (the "Sale Notices"). True and correct copies of the Sale Notices are attached hereto as Exhibit E.

> 8. Following the sale of the Leased Equipment, the deficiency balance of $924,322.27 under Lease A, Lease B, and the Continuing Guaranties remains due and owing by Defendants.

Ms. McIntosh's affidavit in opposition to summary judgment disputes that the haulers were sold in a commercially reasonable manner, disputes that she was notified of the public (online) auction, and presents specific facts that VFS does not address in the record:

1. I am the principal member of Bric Constructors LLC and a Defendant in this case. I am familiar with industry standards for the sale of construction equipment.

3. VFS leasing sold this equipment on IronPlanet.com. This web-site conducts on-line auctions. Anyone can bid on the equipment on this site. This is a public auction. I was not notified of the time or place of this auction.

4. This equipment was not auctioned in a commercially reasonable manner.

5. On the [hauler with serial number 2352], Iron Planet item number 188854, there was only one bidder. This is because there was a button on the web-site that said buy it now. Pressing this button allowed a bidder to by-pass the auction and simply purchase the equipment for $194,000. The purchaser of the equipment then listed it for $279,500 on EquipmentTrader.com. The listing from IronPlanet.com and the subsequent listing from EquipmentTrader.com are attached and offered as exhibit 1 to this affidavit.

6. The [hauler with serial number 2380], Iron Planet item number 187451, was sold for $192,000. The tailgate was not installed, in the picture, even though it was available. It was resold for $239,000 on MachineTrader.com. The listing from IronPlanet.com and the subsequent listing from MachineTrader.com are attached and offered as exhibit 2 to this affidavit.

7. The first 2005 dump truck, serial number 2034, Iron Planet item number 187450, sold on IronPlanet.com for $170,000. It was resold on Rock&Dirt.com for $249,000. The listing from IronPlanet.com and the subsequent listing from Rock&Dirt.com are attached and offered as exhibit 3 to this affidavit.

8. The second 2005 dump truck, serial number 2084, Iron Planet item number 187449, sold on IronPlanet.com for $142,000. The listing from IronPlanet.com is attached and offered as exhibit 4 to this affidavit.

9. All of this equipment sold on 10/30/08. Industry standards require that the purchaser inspect the equipment. No prospective purchaser was permitted to

view any of the equipment in person, or test the equipment in any way. The auction wrote a paragraph about the equipment, however, the narratives were not complete because the equipment was located in a yard that was not large enough to test the equipment.

10. The photos of all the equipment are of the equipment with dirt in the bed of the trucks. It is important to remove everything from the bed of a dump truck, prior to a sale, so that the prospective purchaser can inspect the bed for rust. The trucks were not cleaned. They were sold in the same condition as they were removed from our job site. Dirt was caked on many places on the trucks.

11. The industry standard for sale of dump trucks requires that the dirt be removed from the truck bed, and that the truck be cleaned. Sometimes, the trucks should be painted, and minor repairs effected. These trucks did not require any repairs, because we kept our equipment in excellent condition, and had major repairs done through Volvo. If these trucks had been cleaned, and the service records produced, they would have sold for a higher price.

12. If I had been notified of an auction, I would have appeared at the auction, with my records, to demonstrate that all of the dump trucks were in excellent condition. Additionally, I would have notified other people in the industry that my equipment was for sale, and it was in excellent condition.

The conflicting affidavits in the record present genuine issues of material fact as to whether VFS disposed of the haulers in a commercially reasonable manner. The specific facts that Bric and Ms. McIntosh point to regarding industry standards, how VFS conducted the sale, and the reasonable inferences from those facts do not permit a reasonable person to reach *only one* conclusion. Furthermore, "[c]ommercial reasonableness is a jury question and does not readily lend itself to summary judgment, as reasonable minds may differ over what is commercially reasonable." *NationsBank of N.C., N.A. v. Am. Doubloon Corp.*, 481 S.E.2d 387, 390 (N.C. Ct. App. 1997) (citing *Parks Chevrolet, Inc. v. Watkins*, 329 S.E.2d 728, 730 (N.C. Ct. App. 1985)). "The jury as fact finder 'must consider all the elements of the sale together.'" *NationsBank*, 481 S.E.2d at 390 (citing *Allis-Chalmers Corp. v. Davis,* 245 S.E.2d 566, 569 (N.C. Ct. App. 1978)). Therefore, the grant of summary judgment to VFS was inappropriate.

*Notice*

A secured party who disposes of collateral after a debtor's default must send to the debtor and any secondary obligor a "reasonable authenticated notification of disposition." N.C. Gen. Stat. Ann. § 25-9-611(b). In a non-consumer goods transaction, a sufficient notification of disposition is one that (1) describes the debtor and the secured party, (2) describes the collateral that is the subject of the intended disposition, (3) states the method of intended disposition, (4) states that the debtor is entitled to an accounting of the unpaid indebtedness and states the charge, if any, for an accounting, and (5) states the time and place of a public disposition or the time after which any other disposition is to be made. N.C. Gen. Stat. Ann. § 25-9-613(1). "Whether the contents of a notification that lacks any of the information specified in [N.C. Gen. Stat. Ann. § 25-9-613(1)] are nevertheless sufficient is a question of fact." N.C. Gen. Stat. Ann. § 25-9-613(2).

Bric and Ms. McIntosh challenge the sufficiency and reasonableness of the notifications of sale that VFS sent to them. They note that VFS sent notices of a private sale on or after September 22, 2008, but that the repossessed haulers were indeed sold through a public, online auction on October 30, 2008. Bric and Ms. McIntosh argue that they were not given an opportunity to attend the public, online sale, to provide records, or to do anything that could have helped to increase the sale prices.[7] VFS's notifications strictly comply with requirements (1), (2), and (4) above. As to requirements (3) and (5), the notifications state that the haulers "will be sold at a private sale after 09/22/2008," but fail to mention the possibility, let alone the time and place of, a public online auction, despite VFS's "established process" of selling repossessed equipment through the public auction accessed through IronPlanet.com whenever it fails to sell through the private preferred offering website. A notification of sale's underlying purpose is to permit "those persons with an interest in the collateral to protect their 'interest in the collateral by paying the debt, finding a buyer, or being present at the sale to bid, so that the collateral is not sacrificed by a sale at less than its true value.'" *Gregory Poole Equip. Co. v. Murray*, 414 S.E.2d 563, 566-67 (N.C. Ct. App. 1992) (quoting *Hodges v. Norton,* 223 S.E.2d 848, 850 (N.C. Ct. App. 1976). "To comply with the 'reasonable authenticated notification' requirement of Section 9-611(b), the contents of a notification must be reasonable." N.C. Gen. Stat. Ann. § 25-9-613 cmt. 2. Because the reasonableness and sufficiency of the notifications of disposition are questions of fact, summary judgment was inappropriate.

---

[7] After the Iron Planet online auction, three of the four haulers were sold on other websites for 38% more.

CONCLUSION

We reverse the trial court's grant of partial summary judgment on the issue of damages to VFS and remand for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellee, VFS Leasing Co., and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE