HARRIETT HURST TURNER AND JOHN HENRY HURST, PLAINTIFFS v. THE HAMMOCKS BEACH CORPORATION, NANCY SHARPE CAIRD, SETH DICKMAN SHARPE, SUSAN SPEAR SHARPE, WILLIAM AUGUST SHARPE, NORTH CAROLINA STATE BOARD OF EDUCATION, ROY A. COOPER, III, IN HIS CAPACITY AS ATTORNEY GENERAL OF THE STATE OF NORTH CAROLINA, DEFENDANTS

No. COA07-1287

(Filed 19 August 2008)

## 1. Appeal and Error— appealability—denial of motion to dismiss—collateral estoppel

Defendant's appeal from the trial court's interlocutory order denying its motion to dismiss based upon collateral estoppel was immediately appealable since it affected a substantial right, because: (1) in contrast to *Foster*, 181 N.C. App. 152 (2007), the prior action upon which defendant in the present case relied in support of its defense of collateral estoppel did result in a final adjudication on the merits; and (2) the present action presented the possibility of a result inconsistent with the prior court's decision.

## 2. Collateral Estoppel and Res Judicata— motion to dismiss—accounting—termination of trust—reversion to contingent beneficiaries—breach of fiduciary duty

The trial court erred in an accounting, termination of trust and reversion to contingent beneficiaries, and breach of fiduciary duty case by denying defendant corporation's motion to dismiss

**TURNER v. HAMMOCKS BEACH CORP.**

[192 N.C. App. 50 (2008)]

under N.C.G.S. § 1A-1, Rule 12(b)(6) based on collateral estoppel, and the case is reversed and remanded with instructions to grant the motion to dismiss, because: (1) plaintiffs did not retain future interests in the property that vested in defendant following the 1987 consent judgment; and (2) this issue was litigated and decided against plaintiffs in the prior action, and plaintiffs cannot now relitigate the issue as a basis for the claims they assert in the present action.

Judge TYSON dissenting.

Appeal by Defendant The Hammocks Beach Corporation from order entered 23 August 2007 by Judge R. Allen Baddour, Jr. in Superior Court, Wake County. Heard in the Court of Appeals 2 April 2008.

*The Francis Law Firm, PLLC, by Charles T. Francis, for Plaintiffs-Appellees.*

*Hunton & Williams LLP, by Anthony R. Foxx and Frank E. Emory, Jr., for Defendant-Appellant The Hammocks Beach Corporation.*

McGEE, Judge.

The Hammocks Beach Corporation (Defendant) appeals from the trial court's order denying its motion to dismiss under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). For the reasons set forth herein, we reverse and remand with instructions to the trial court to grant Defendant's motion to dismiss.

Harriett Hurst Turner and John Henry Hurst (Plaintiffs) filed a complaint on 15 December 2006 against Defendant and several other defendants who are not parties to this appeal. Plaintiffs' claims arose out of the administration of a trust created by deed in 1950 (the 1950 deed) by Dr. William Sharpe (Dr. Sharpe).

Specifically, Plaintiffs alleged that in 1923, Dr. Sharpe, who was a neurosurgeon from New York, purchased 810 acres on the mainland in Onslow County, North Carolina. Subsequently, in 1930 and 1931, Dr. Sharpe "purchased adjacent property consisting of approximately 2,000 acres of sandy beach outer banks (known as Bear Island) and approximately 7,000 acres of marshland." The high land on the mainland portion of the property was known as "the Hammocks."

According to Plaintiffs' complaint, Dr. Sharpe became friends with John and Gertrude Hurst (the Hursts), an Onslow County couple who moved onto Dr. Sharpe's property as its managers and caretakers. After many years of a mutually beneficial business relationship and personal friendship between Dr. Sharpe and the Hursts, Dr. Sharpe advised the Hursts that he wanted to devise the Hammocks to them. However, as reflected in an agreement dated 6 September 1950 (the 1950 agreement), recorded in the Onslow County Registry, "Gertrude Hurst, having formerly served as a black teacher in the then racially segregated public school system, requested Dr. Sharpe instead make a gift of the property in such manner that African-American teachers and their then existing organizations could enjoy the property." Plaintiffs further alleged as follows:

> Pursuant to [Gertrude] Hurst's request, and rather than wait until his death, Dr. Sharpe, in 1950, by deed of gift, deeded certain real property to a nonprofit corporation, as trustee. The Hammocks Beach Corporation was the name given to the trustee entity, and its charter spelled out its purpose—to administer the property given to it by Dr. Sharpe "primarily for the teachers in public and private elementary, secondary and collegiate institutions for Negroes in North Carolina . . . and for such other groups as are hereinafter set forth." The deed to The Hammocks Beach Corporation as trustee restricted the use of the property "for the use and benefit of the members of The North Carolina Teachers Association, Inc., and such others as are provided for in the Charter of the Hammocks Beach Corporation." The deed is recorded in the Onslow County Register of Deeds at Deed Book 221, Page 636[.]

The 1950 deed specifically made provision for the property in the event that the purposes of the trust became impossible or impracticable:

> IT IS FURTHER PROVIDED AND DIRECTED by the said grantors, parties of the first part, that if at any time in the future it becomes impossible or impractical to use said property and land for the use as herein specified and if such impossibility or impracticability shall have been declared to exist by a vote of the majority of the directors of the Hammocks Beach Corporation, Inc., the property conveyed herein may be transferred to The North Carolina State Board of Education, to be held in trust for the purpose herein set forth, and if the North Carolina State

Board of Education shall refuse to accept such property for the purpose of continuing the trust herein declared, all of the property herein conveyed shall be deeded by said Hammocks Beach Corporation, Inc. to Dr. William Sharpe, his heirs and descendants and to John Hurst and Gertrude Hurst, their heirs and descendants; The Hurst family shall have the mainland property and the Sharpe family shall have the beach property[.]

Plaintiffs further alleged that in a prior action filed by Defendant in 1986,

the Sharpe and Hurst heirs contended that fulfillment of the trust terms had become impossible or impracticable, that The Hammocks Beach Corporation had acted capriciously and contrary to the intent of the settlor in not declaring its recognition of such, and that the court should declare the trust terminated and either mandate a conveyance of all of the property to the Sharpe and Hurst families or adjudicate title in their names.

However, prior to trial in the earlier action, the parties reached a settlement, which was approved by the trial court in a consent judgment (the 1987 consent judgment). Plaintiffs in the present action cited portions of the 1950 deed, the 1950 agreement, and the 1987 consent judgment in their complaint.

Plaintiffs also alleged that "[a]s in 1987, fulfillment of the trust terms has become impossible or impracticable." Plaintiffs alleged claims for (1) an accounting, (2) "Termination of Trust and Reversion to Contingent Beneficiaries," and (3) breach of fiduciary duty. In support of Plaintiffs' claim for an accounting, Plaintiffs alleged that they were "remainder beneficiaries and interested parties" under the 1950 deed. Similarly, under their claim for "Termination of Trust and Reversion to Contingent Beneficiaries," Plaintiffs alleged that they were "contingent beneficiaries" of the 1950 deed. In support of their claim for breach of fiduciary duty, Plaintiffs also alleged that they were "remainder beneficiaries and interested persons" under the 1950 deed.

Defendant filed a motion to dismiss and a motion for a protective order on 5 July 2007. Regarding its motion to dismiss, Defendant asserted as follows:

Pursuant to the [1987] Consent Judgment, Plaintiffs have no rights to the property that is the subject of this lawsuit and therefore no further rights as beneficiaries of the trust to an account-

ing or a claim of breach of fiduciary duty. To the extent Plaintiffs seek to relitigate that issue now, they are precluded from doing so by the doctrine of issue preclusion.

Defendant filed a memorandum in support of its motion to dismiss, and Plaintiffs filed a memorandum in opposition to Defendant's motion to dismiss. The trial court entered an order denying Defendant's motion to dismiss on 23 August 2007. Defendant appeals.

I.

[1] We first address the interlocutory nature of this appeal. "In general, the denial of a motion to dismiss is interlocutory and thus not immediately appealable." *McCarn v. Beach*, 128 N.C. App. 435, 437, 496 S.E.2d 402, 404, *disc. review denied*, 348 N.C. 73, 505 S.E.2d 874 (1998). However, immediate review of an interlocutory order is available: (1) where the trial court certifies, pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b), that there is no just reason for delay of an appeal from a final order as to one or more, but not all, of the claims; and (2) where the interlocutory order affects a substantial right in accordance with N.C. Gen. Stat. § 1-277(a). *Sharpe v. Worland*, 351 N.C. 159, 161-62, 522 S.E.2d 577, 579 (1999).

In the case before us, the trial court's order from which Defendant appeals does not contain a Rule 54(b) certification. Defendant thus argues that the trial court's order denying its motion to dismiss based upon collateral estoppel affects a substantial right.

Whether or not "a substantial right is affected is determined on a case-by-case basis." *McCallum v. N.C. Coop. Extension Serv.*, 142 N.C. App. 48, 50, 542 S.E.2d 227, 231, *disc. review denied*, 353 N.C. 452, 548 S.E.2d 527 (2001). In *McCallum*, our Court recognized that "[l]ike *res judicata*, collateral estoppel (issue preclusion) is ' "designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." ' " *Id.* at 51, 542 S.E.2d at 231 (quoting *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973) (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 599, 92 L. Ed. 898, 907 (1948))). Our Court further recognized that "[u]nder collateral estoppel, parties are precluded from retrying fully litigated issues that were decided in any prior determination, even where the claims asserted are not the same." *Id.* Therefore, our Court held as follows:

The denial of summary judgment based on collateral estoppel, like *res judicata*, may expose a successful defendant to repeti-

tious and unnecessary lawsuits. Accordingly, we hold that the denial of a motion for summary judgment based on the defense of collateral estoppel may affect a substantial right, and that [the] defendants' appeal, although interlocutory, is properly before us.

*Id.*

Our Court recently held that a trial court's order denying a Rule 12(b)(6) motion to dismiss based in part upon a rejection of the defendants' affirmative defense of collateral estoppel affected a substantial right in *Strates Shows, Inc. v. Amusements of Am., Inc.*, 184 N.C. App. 455, 646 S.E.2d 418 (2007). In *Strates*, as in the case before us, several of the defendants appealed from the denial of their motions to dismiss based upon collateral estoppel. *Id.* at 459, 646 S.E.2d at 422. Our Court held that "[the] defendants' appeal is properly before us[.]" *Id.* at 459, 646 S.E.2d at 422. Likewise, in the present case, we hold the trial court's order denying Defendant's motion to dismiss based upon collateral estoppel affects a substantial right, is immediately appealable, and is properly before us. *See id.*

The dissent cites *Foster v. Crandell*, 181 N.C. App. 152, 638 S.E.2d 526 (2007), and argues that "Defendant has failed to meet its burden of showing that the rejection of its issue preclusion or collateral estoppel defense will result in two inconsistent verdicts." Although *Foster* is distinguishable from the present case, *Foster* supports our decision to review this interlocutory appeal.

In *Foster*, the defendants filed an answer to the plaintiffs' complaint and later filed a motion for judgment on the pleadings. *Id.* at 159, 638 S.E.2d at 532. In support of their motion, the defendants argued that the plaintiffs' prior settlement with two non-parties barred the plaintiffs' recovery in the current action. *Id.* The trial court denied the defendants' motion. *Id.* Following discovery, the defendants moved for summary judgment, again arguing, *inter alia*, that the plaintiffs' prior settlement barred the plaintiffs' recovery in the current action. *Id.* The trial court denied the motion, and the defendants appealed. *Id.* at 159-60, 638 S.E.2d at 532. While recognizing that an order rejecting the defenses of *res judicata* and collateral estoppel can affect a substantial right, our Court in *Foster* held that the summary judgment order appealed from in that case did not affect a substantial right because the prior action on which the defendants relied in support of their defenses of *res judicata* and collateral estoppel did not result in a final determination on the merits "by either a jury or a judge[.]" *Id.* at 162-64, 638 S.E.2d at 533-34. Specifically, the

defendants asserted that the plaintiffs' prior settlement and accompanying dismissal barred the plaintiffs' current action. *Id.* at 163, 638 S.E.2d at 534. However, because the prior settlement was not a final adjudication on the merits for purposes of *res judicata* and collateral estoppel, our Court held that "there is no possibility of a result inconsistent with a prior jury verdict or a prior decision by a judge." *Id.*

In contrast to *Foster*, the prior action upon which Defendant in the present case relies in support of its defense of collateral estoppel did result in a final adjudication on the merits. Specifically, Defendant argues that the 1987 consent judgment was a final adjudication on the merits that bars the present action. A consent judgment is a final judgment on the merits for purposes of *res judicata* and collateral estoppel. *NationsBank of N.C. v. American Doubloon Corp.*, 125 N.C. App. 494, 504, 481 S.E.2d 387, 393, *disc. review denied*, 346 N.C. 282, 487 S.E.2d 551 (1997); *see also McLeod v. McLeod*, 266 N.C. 144, 153, 146 S.E.2d 65, 71 (1966) (holding that "a consent judgment is *res judicata* as between the parties upon all matters embraced therein"); *Nash Cty. Bd. of Ed. v. Biltmore Co.*, 640 F.2d 484, 487 n.5 (4th Cir. 1981), *cert. denied*, 454 U.S. 878, 70 L. Ed. 2d 188, *reh'g denied*, 454 U.S. 1117, 70 L. Ed. 2d 654 (1981) (noting that "North Carolina law gives *res judicata* effect to consent judgments" (citing *Simpson v. Plyler*, 258 N.C. 390, 397, 128 S.E.2d 843, 848 (1963); *McRary v. McRary*, 228 N.C. 714, 719, 47 S.E.2d 27, 31 (1948))). Therefore, because the prior action resulted in a final judgment on the merits, the present action presents the possibility of a result inconsistent with the prior trial court's decision. Accordingly, we hold Defendant has demonstrated that the order appealed from affects a substantial right and is immediately appealable.

## II.

[2] We next determine whether the trial court's order denying Defendant's motion to dismiss was in error. In support of Plaintiffs' claims in the present action, Plaintiffs alleged that they were remainder or contingent beneficiaries under the 1950 deed. In response to these allegations, Defendant contends that Plaintiffs did not retain any rights to the real property that vested in Defendant based upon the provisions of the 1987 consent judgment. Therefore, Defendant argues that Plaintiffs' claims in this action are barred by collateral estoppel.

Collateral estoppel will apply to prevent the re-litigation of issues when: "(1) a prior suit result[ed] in a final judgment on the merits; (2)

**TURNER v. HAMMOCKS BEACH CORP.**

[192 N.C. App. 50 (2008)]

identical issues [were] involved; (3) the issue was actually litigated in the prior suit and necessary to the judgment; and (4) the issue was actually determined." *McDonald v. Skeen*, 152 N.C. App. 228, 230, 567 S.E.2d 209, 211, *disc. review denied*, 356 N.C. 437, 571 S.E.2d 222 (2002). A consent judgment is a final judgment on the merits for purposes of collateral estoppel. *NationsBank of N.C.*, 125 N.C. App. at 504, 481 S.E.2d at 393.

When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), "[t]he question for the court is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not."[1] *Harris v. NCNB*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). "In ruling upon such a motion, the complaint is to be liberally construed, and the court should not dismiss the complaint 'unless it appears beyond doubt that [the] plaintiff could prove no set of facts in support of [the plaintiff's] claim which would entitle [the plaintiff] to relief.' " *Holloman v. Harrelson*, 149 N.C. App. 861, 864, 561 S.E.2d 351, 353 (quoting *Dixon v. Stuart*, 85 N.C. App. 338, 340, 354 S.E.2d 757, 758 (1987)), *disc. review denied*, 355 N.C. 748, 565 S.E.2d 665 (2002). We review the trial court's ruling on a Rule 12(b)(6) motion to dismiss *de novo*. *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd per curiam*, 357 N.C. 567, 597 S.E.2d 673 (2003).

The central issue in the present case is whether Plaintiffs retained any interest in the real property that vested in Defendant based upon the 1987 consent judgment. In order to determine this issue, we must examine the 1987 consent judgment as well as the

---

1. We note that even though Plaintiffs did not attach the 1987 consent judgment, the 1950 deed, or the 1950 agreement to their complaint, it appears from the record that the trial court reviewed these documents when ruling upon Defendant's motion to dismiss. In that Plaintiffs referred to these documents in their complaint and because Plaintiffs' claims relied upon these documents, we hold that the trial court's review of these documents did not convert the motion to dismiss into a summary judgment motion. *See Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 255, 580 S.E.2d 757, 759 (2003) (holding that "[a]lthough the trial court must have necessarily considered [the] plaintiff's administrative complaint and/or right-to-sue letter, documents not attached to the complaint, in ruling on the motion, because [the] plaintiff referred to these documents in the complaint and they form the procedural basis for the complaint, the trial court did not convert the motion into one for summary judgment by doing so"); *Robertson v. Boyd*, 88 N.C. App. 437, 441, 363 S.E.2d 672, 675 (1988) (holding that the trial court did not convert the defendants' motions to dismiss into motions for summary judgment by reviewing documents attached to the motions to dismiss "[b]ecause these documents were the subjects of some of [the] plaintiffs' claims and [the] plaintiffs specifically referred to the documents in their complaint").

1950 deed and the 1950 agreement referenced therein. In the 1987 consent judgment, the trial court made findings of fact summarizing the positions of the parties to the prior action:

> Hammocks Beach Corporation contends that either it should be vested with fee simple title to a portion of the trust property or that the terms of the trust should be modified so that an appropriate portion of the trust property may be held by it free of any rights vested in the Sharpe and Hurst families and with authority to mortgage and sell in its discretion.

> The Sharpe and Hurst defendants, on the other hand, contend that fulfillment of the trust terms has become impossible or impracticable, that Hammocks Beach Corporation has acted capriciously and contrary to the intent of the settlor in not declaring its recognition of such, and that the court should declare the trust terminated and either mandate a conveyance of all of the property to the Sharpe and Hurst families or adjudicate title in their names.

As the trial court stated, Defendant, who was the plaintiff in the prior action, sought either (1) termination of the trust in order to vest in Defendant fee simple title to a portion of the property, or (2) continuation of the trust with modifications to allow Defendant to hold a portion of the trust property free and clear of any rights of the Hurst family. However, the trial court made an additional finding of fact that after lengthy negotiations, the parties agreed that the trust should continue "so as to carry out the original intentions of Dr. Sharpe[.]"

In accordance with that disposition, the trial court ordered in its 1987 consent judgment that Defendant be vested with title to a certain portion of the property, and further ordered that Defendant, as trustee, hold title to that property "subject to the trust terms set forth in the [1950 deed] and in [the 1950 agreement]." We must now determine which trust terms remained in effect following the 1987 consent judgment.

Plaintiff contends, and the trial court in the present action necessarily concluded, that the following trust terms in the 1950 deed remained in full force and effect:

> IT IS FURTHER PROVIDED AND DIRECTED by the said grantors, parties of the first part, that if at any time in the future it becomes impossible or impractical to use said property and land for the use as herein specified and if such impossibility or

impracticability shall have been declared to exist by a vote of the majority of the directors of the Hammocks Beach Corporation, Inc., the property conveyed herein may be transferred to The North Carolina State Board of Education, to be held in trust for the purpose herein set forth, and if the North Carolina State Board of Education shall refuse to accept such property for the purpose of continuing the trust herein declared, all of the property herein conveyed shall be deeded by said Hammocks Beach Corporation, Inc. to Dr. William Sharpe, his heirs and descendants and to John Hurst and Gertrude Hurst, their heirs and descendants; The Hurst family shall have the mainland property and the Sharpe family shall have the beach property[.]

Relying upon this provision, Plaintiffs now argue, as they did in the prior action, that because the terms of the trust have become impossible or impracticable, the trust should be terminated and Defendant should be compelled to convey to Plaintiffs the mainland property. We disagree.

In the 1987 consent judgment, the trial court concluded:

The settlement which has resulted from negotiations between the parties, whereunder Hammocks Beach Corporation as trustee would hold title to an appropriate portion of The Hammocks *free of any claims of the Sharpes and Hursts* and with broader administrative powers, with the remainder of said property being vested in the Sharpe and Hurst defendants, is fair, reasonable, and in the best interests of the present and prospective beneficiaries of the trust, as well as the public interest, and is accordingly approved.

(Emphasis added.) This conclusion demonstrates that the trial court intended for the consent judgment to adjudicate title to a portion of the property to Defendant "free of any claims of the Sharpes and Hursts[.]" Moreover, following the specific order in the 1987 consent judgment that states that Defendant holds title to an appropriate portion of real property subject to the trust terms, the trial court further concluded that "[s]aid real property so vested in Hammocks Beach Corporation as trustee shall be *free and clear of any rights of the heirs of Dr. William Sharpe or of Gertrude Hurst or of the heirs of John and Gertrude Hurst.*" (Emphasis added.)

Plaintiffs contend that by this language, the trial court simply intended to extinguish Plaintiffs' extensive use and occupancy rights

that had burdened the property, and the trial court did not intend to extinguish Plaintiffs' future interests. We cannot agree.

We examine the trial court's findings of fact in the 1987 consent judgment in order to determine which trust terms remained in effect following the 1987 consent judgment. The trial court specifically found that the parties intended for the trust to continue so as to effectuate its original purposes:

> In an effort to avoid the risk of a trial of this action and *in search of a means of continuing the trust so as to carry out the original intentions of Dr. Sharpe*, the parties have negotiated at great length. Through their counsel, they have stated to the court that, subject to the court's approval, they have agreed to the entry of a judgment which would (1) enable Hammocks Beach Corporation to retain title to a sufficient portion of the land *to serve the trust purposes*, with additional powers of administration which should enable it to improve the property to the extent reasonably necessary, and (2) vest in the Sharpe and Hurst families a reasonable portion of the land in exchange for their relinquishing rights in that portion to be vested solely in Hammocks Beach Corporation as trustee.

(Emphases added.) The trial court in the 1987 consent judgment summarized the purposes of the trust as follows:

> Eventually, Dr. Sharpe apprised John and Gertrude Hurst of his desire to devise The Hammocks to them. As stated in the [1950 agreement], Gertrude Hurst, having formerly served as a black teacher in the then racially segregated public school system, requested Dr. Sharpe instead to make a gift of the property in such manner that black teachers and various youth organizations could enjoy the property. Pursuant to that request, and rather than wait until his death, Dr. Sharpe, in 1950, by deed of gift, gave The Hammocks to a nonprofit corporation, most of the incorporators of which were black school teachers. Hammocks Beach Corporation was the name given to such entity, and its charter spelled out its purpose—to administer the property given to it by Dr. Sharpe "primarily for the teachers in public and private elementary, secondary and collegiate institutions for Negroes in North Carolina . . . and for such other groups as are hereinafter set forth." The deed to Hammocks Beach Corporation as trustee restricted the use of the property for the use and benefit of the members of "The North Carolina Teachers Association, Inc., and

such others as are provided for in the Charter of Hammocks Beach Corporation."

Accordingly, when the trial court in the 1987 consent judgment ordered that Defendant hold title to the property subject to the trust terms, the trial court was referring to the trust purposes. Had the trial court intended for the impossibility and impracticability terms of the 1950 deed to remain in effect following the 1987 consent judgment, it would have so ordered. We hold that based upon the trial court's findings, conclusions, and order in the 1987 consent judgment, all of Plaintiffs' rights to the property that vested in Defendant by reason of the 1987 consent judgment, including any alleged future interests of Plaintiffs, were extinguished.

Our decision is further supported by the provisions in the 1987 consent judgment allowing Defendant to sell portions of the property that vested in Defendant. The provisions for sale do not require Plaintiffs' approval. In order to sell or encumber the property, Defendant need only apply to the trial court:

> Said trustee shall not, however, be under a prohibition against the mortgaging or sale of said property. On application to the court by motion, copy of which shall be served on the Attorney General, the Court may approve the encumbering of said property, or the sale of a portion thereof, for the purpose of generating funds for use *in furtherance of the terms of the trust.*

(Emphasis added.) These provisions are inconsistent with Plaintiffs' contention that they retained future interests in the property. Moreover, these provisions illustrate that the "terms of the trust" that remained in effect following the 1987 consent judgment relate to the original purposes for which the trust was created.

For the reasons stated above, we hold that Plaintiffs did not retain future interests in the property that vested in Defendant following the 1987 consent judgment. This issue was litigated and decided against Plaintiffs in the prior action, and Plaintiffs cannot now re-litigate the issue as a basis for the claims they assert in the present action. Therefore, we hold that Plaintiffs' claims are barred by collateral estoppel and that the trial court erred by denying Defendant's motion to dismiss. We reverse and remand with instructions to the trial court to grant Defendant's motion to dismiss. Because we hold for Defendant on its first argument, we do not reach Defendant's remaining arguments.

**TURNER v. HAMMOCKS BEACH CORP.**

[192 N.C. App. 50 (2008)]

Reversed and remanded.

Judge STEPHENS concurs.

Judge TYSON dissents with a separate opinion.

TYSON, Judge dissenting.

Harriett Hurst Turner and John Henry Hurst (collectively, "plaintiffs") initially argue this appeal should be dismissed as interlocutory. I agree. The trial court did not certify this case as immediately appealable pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure and Hammocks Beach Corporation ("defendant") made no showing that the trial court's denial of its motion to dismiss affects a substantial right which will be lost without immediate review. I vote to dismiss defendant's appeal as interlocutory.

The majority's opinion finds a substantial right exists and reaches the merits of defendant's interlocutory appeal. On the merits, the majority's opinion erroneously reverses the trial court's order denying defendant's motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (2005). Under the applicable standard of review, the trial court correctly ruled that plaintiffs' complaint stated a legal cause of action and claims for relief. Presuming *arguendo*, defendant's interlocutory appeal is properly before this Court, the trial court's order should be affirmed. I respectfully dissent.

## I. Interlocutory Nature of the Appeal

On 14 November 2007, plaintiffs filed a motion to dismiss defendant's appeal as interlocutory. Plaintiffs correctly argued the trial court's denial of defendant's motion to dismiss does not affect a substantial right which would be lost without immediate review.

"Interlocutory orders are those made during the pendency of an action which do not dispose of the case, but instead leave it for further action by the trial court in order to settle and determine the entire controversy." *Carriker v. Carriker*, 350 N.C. 71, 73, 511 S.E.2d 2, 4 (1999) (citation omitted). "Ordinarily, a trial court's denial of a motion to dismiss pursuant to Rule 12(b)(6) of the Rules of Civil Procedure is an interlocutory order from which there is no right of appeal." *Grant v. Miller*, 170 N.C. App. 184, 185-86, 611 S.E.2d 477, 478 (2005) (citation omitted).

**TURNER v. HAMMOCKS BEACH CORP.**

[192 N.C. App. 50 (2008)]

An interlocutory order is immediately appealable in only two instances: (1) if the trial court certifies that there is no just reason to delay the appeal pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b) or (2) when the challenged order affects a substantial right the appellant would lose without immediate review. *Embler v. Embler*, 143 N.C. App. 162, 164, 545 S.E.2d 259, 261 (2001). "In either instance, it is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal, and not the duty of this Court to construct arguments for or find support for appellant's right to appeal." *Country Club of Johnston County, Inc. v. U.S. Fidelity and Guar. Co.*, 135 N.C. App. 159, 162, 519 S.E.2d 540, 543 (1999) (internal citations and quotations omitted), *disc. rev. denied*, 351 N.C. 352, 542 S.E.2d 207 (2000).

It is undisputed that defendant's appeal is interlocutory. The trial court did not certify its order as immediately appealable pursuant to N.C. Gen. Stat. § 1A-1, Rule 54(b). Therefore, defendant must show the trial court's order denying its Rule 12(b)(6) motion to dismiss affects a substantial right. *Embler*, 143 N.C. App. at 165, 545 S.E.2d at 261. "The question of whether an interlocutory appeal affects a substantial right must be considered in light of the 'particular facts of that case and the procedural context in which the order from which appeal is sought was entered.'" *Grant*, 170 N.C. App. at 186, 611 S.E.2d at 478 (quoting *Sharpe v. Worland*, 351 N.C. 159, 162-63, 522 S.E.2d 577, 579 (1999)). "Our courts generally have taken a restrictive view of the substantial right exception." *Embler*, 143 N.C. App. at 166, 545 S.E.2d at 262 (citation omitted).

This Court has recognized that "[w]hen a trial court enters an order rejecting the affirmative defenses of *res judicata* and collateral estoppel, the order *can* affect a substantial right and *may* be immediately appealed." *Foster v. Crandell*, 181 N.C. App. 152, 162, 638 S.E.2d 526, 533-34 (citation and quotation omitted) (emphasis supplied), *disc. rev. denied*, 361 N.C. 567, 650 S.E.2d 602 (2007). However, the procedural posture of *Foster* is distinguishable from the case at bar.

In *Foster*, the defendants answered the plaintiffs' complaint and moved for judgment on the pleadings, asserting the affirmative defenses of *res judicata* and collateral estoppel. *Id.* at 159, 638 S.E.2d at 532. The defendants' motion was denied. *Id.* Following discovery, the defendants moved for summary judgment on the same grounds. *Id.* The trial court entered an order, which partially denied the

defendants' motion for summary judgment and rejected the defendants' defenses of *res judicata* and collateral estoppel. *Id.* The defendants' appealed the trial court's order to this Court. *Id.* at 160, 638 S.E.2d at 532.

Here, defendant's Rule 12(b) motions to dismiss were made at the earliest stages of litigation. Defendant has not answered plaintiffs' allegations and is under a court order, not appealed from, to respond to plaintiffs' discovery requests. Defendant has not asserted any affirmative defenses by answer. Defendant failed to appeal the denial of an earlier motion to dismiss or the granting of plaintiffs' motion to compel discovery.

Further, this Court has held "[i]ncantation of the two doctrines does not . . . automatically entitle a party to an interlocutory appeal of an order rejecting those two defenses." *Id.* at 162, 638 S.E.2d at 534. Review of an interlocutory appeal is limited to situations where "the rejection of those defenses gave rise to a risk of two actual trials resulting in two different verdicts." *Id.*

Defendant has failed to meet its burden of showing that the rejection of its issue preclusion or collateral estoppel defense will result in two inconsistent verdicts. I vote to dismiss defendant's appeal as interlocutory and remand this case to the trial court for further proceedings.

## II. Motion to Dismiss

### A. Standard of Review

On a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure, the standard of review is whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory. The complaint must be liberally construed, and *the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief.*

*Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 480, 593 S.E.2d 595, 598 (internal quotations omitted) (emphasis supplied), *disc. rev. denied*, 358 N.C. 543, 599 S.E.2d 49 (2004). "On a motion to dismiss . . . the evidence is to be taken in the light most favorable to the plaintiff, and he is entitled to the benefit of every reasonable

intendment upon the evidence and every reasonable inference to be drawn therefrom." *Gossett v. Insurance Co.*, 208 N.C. 152, 157, 179 S.E. 438, 441 (1935). "This Court must conduct a *de novo* review of the pleadings to determine their legal sufficiency and to determine whether the trial court's ruling on the motion to dismiss was correct." *Leary v. N.C. Forest Prods., Inc.*, 157 N.C. App. 396, 400, 580 S.E.2d 1, 4, *aff'd*, 357 N.C. 567, 597 S.E.2d 673 (2003).

### B. Analysis

The majority's opinion holds that the trial court's denial of defendant's motion to dismiss, based upon the affirmative defense of issue preclusion or collateral estoppel, affects a substantial right and reviews the merits of defendant's appeal. The majority's opinion further holds: (1) the 1987 consent judgment clearly and unambiguously extinguished all of plaintiffs' extensive use and occupancy rights, as well as their contingent reversionary interest in real property vested in and specifically held by defendant as "trustee" and (2) collateral estoppel compelled the trial court to grant defendant's Rule 12(b)(6) motion to dismiss. I disagree.

### 1. Contract Interpretation

"A consent judgment is a court-approved contract subject to the rules of contract interpretation." *Walton v. City of Raleigh*, 342 N.C. 879, 881, 467 S.E.2d 410, 411 (1996) (citation omitted). When interpreting a contract, the court is guided by the following principles:

> The goal of construction is to arrive at the intent of the parties when the contract was written. . . . The various terms of the contract are to be harmoniously construed, and if possible, every word and every provision is to be given effect. . . . If the meaning of the contract is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract[,] [create or extend new rights,] or impose liabilities on the parties not bargained for and found therein.

*Duke Energy Corp. v. Malcolm*, 178 N.C. App. 62, 65, 630 S.E.2d 693, 695 (citation and quotation omitted), *aff'd*, 361 N.C. 111, 637 S.E.2d 538 (2006). When a contract is clear and unambiguous on its face, it will be enforced as written by the court as a matter of law. *Dockery v. Quality Plastic Custom Molding, Inc.*, 144 N.C. App. 419, 421-22, 547 S.E.2d 850, 852 (2001).

Conversely:

> [i]f the agreement is ambiguous, . . . interpretation of the contract is a matter for the jury. Ambiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties. *The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous.*

*Id.* at 422, 547 S.E.2d at 852 (internal citation and quotation omitted) (emphasis supplied). This Court has also previously held that "[i]f the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent . . . to show and make certain what was the real agreement between the parties; and in such a case what was meant, is for the jury, under proper instructions from the court." *Cleland v. Children's Home,* 64 N.C. App. 153, 156, 306 S.E.2d 587, 589 (1983) (citation and quotation omitted).

Viewing the evidence in the light most favorable to plaintiffs and giving them the benefit of every reasonable inference to be drawn therefrom, the 1987 consent judgment, read as a whole, contains several provisions tending to show plaintiffs' contingent reversionary interests in the property were not extinguished. Alternatively, the terms of the 1987 consent judgment are ambiguous at best and the parties' intent is a question for the jury, not the court. The trial court correctly denied defendant's Rule 12(b)(6) motion to dismiss.

### 2. Terms of the Consent Judgment

Plaintiffs argued before the trial court and again before us that the provisions contained in the 1987 consent judgment only relinquished plaintiffs' extensive "current and present use" rights in the real property including, "the right to cultivate, to quarry, to raise livestock, to travel over the land incident to taking fin fish and shellfish in adjacent waters, and to reside there." Plaintiffs assert their contingent reversionary interest in the property was not compromised or extinguished by the 1987 consent judgment.

Defendant argues and the majority's opinion agrees that the 1987 consent judgment extinguished any and all rights plaintiffs acquired through Dr. William Sharpe's ("Dr. Sharpe") express reservation and contingent reversions to the property by the 1950 deed, agreement, and defendant's Certificate of Amendment to their 1948 Certificate of Incorporation. Defendant further asserts that plaintiffs have no right to litigate this issue.

## TURNER v. HAMMOCKS BEACH CORP.

[192 N.C. App. 50 (2008)]

To determine whether plaintiffs retained any future interest in the real property, the conditions contained in the 1950 deed, agreement, defendant's Certificate of Amendment to their 1948 Certificate of Incorporation, and subsequent 1987 consent judgment must be reviewed together and "harmoniously construed." *Duke Energy Corp.*, 178 N.C. App. at 65, 630 S.E.2d at 695. Defendant's stewardship over Dr. Sharpe's property arose *solely* from the 1950 deed, agreement, and defendant's Certificate of Amendment to their 1948 Certificate of Incorporation and is strictly limited to those purposes and uses contained within these documents, except as was expressly and unambiguously modified by the 1987 consent judgment.

In 1950, Dr. Sharpe deeded certain real property to defendant, "as trustee," for the purpose of overseeing and administering the property "primarily for the teachers in public and private elementary, secondary and collegiate institutions for Negroes in North Carolina . . . and for such other groups as are hereinafter set forth." The deed also included specific provisions and reservations in the event the trust purposes later became impossible, impractical, or unlawful:

> [I]f at any time in the future it becomes impossible or impractical to use said property and land for the use as herein specified . . . the property conveyed herein may be transferred to the North Carolina State Board of Education, *to be held in trust for the purpose herein set forth, and if the North Carolina State Board of Education shall refuse to accept such property for the purpose of continuing the trust herein declared, all of the property herein conveyed shall be deeded by said The Hammocks Beach Corporation, Inc., to Dr. William Sharpe, his heirs and descendants and to John Hurst and Gertrude Hurst, their heirs and descendants*; the Hurst family shall have the main land property and the Sharpe family shall have the beach property.

(Emphasis supplied). This language is virtually identical to a provision contained in defendant's Certificate of Amendment to their 1948 Certificate of Incorporation.

Dr. Sharpe, as settlor, expressly reserved a contingent reversionary interest in the property, first as "may be transferred" to the State of North Carolina, and upon the State's refusal to accept the property, Dr. Sharpe required that the property "shall be deeded" to himself and others as now represented by plaintiffs, if it became "impossible or impractical to use said property and land for the use as . . . specified"

in the trust. This express reservation and contingent reversion remained part of Dr. Sharpe's estate upon his death and vested in "his heirs and descendants and to John Hurst and Gertrude Hurst, their heirs and descendants[,]" subject to the initial contingent interest of the State of North Carolina. The State expressly renounced its interest in 1987 and again in this action, wherein the State sought and secured dismissal with prejudice.

In 1986, defendant herein originally brought suit as plaintiff seeking "declaratory relief in the form of a judgment quieting title to the property or, alternatively, ordering an alternative disposition of the property and administration of the trust to fulfill as nearly as possible the manifested general intention of the settlor, Dr. William Sharpe." The living Sharpe and Hurst family members filed an answer and counterclaims alleging Hammocks Beach Corporation had failed to properly administer the trust and asked the court to: (1) terminate the trust; (2) use the doctrine of *cy pres* to modify the trust and remove Hammocks Beach Corporation as trustee; or (3) clarify the property interests held by each party.

In 1987, all parties entered into a consent judgment, in which the trial court specifically stated:

> The dispute between plaintiff and defendants has continued for over a decade. The impediments to the administration of the trust as contemplated by the settlor have existed and frustrated the plaintiff's attempts to develop the property for over thirty years. Considering all circumstances, including the delays, uncertainties, risks, and prohibitive costs inherent in this litigation, the parties hereto, without in any way conceding error in their respective legal positions, have entered into a compromise resolution and agreement and consented to the entry of this Consent Judgment, fully intending to bind themselves, their heirs, assigns, and successors.

The trial court also made extensive findings of fact including the following:

> The trust is impossible or impracticable of fulfillment whether the trustee continues to be Hammocks Beach Corporation or whether, in the event the Board would so agree, the trust responsibilities should be assumed by it or by any other agency of state government. Thus, Dr. Sharpe's alternate plan of having the Board

assume the trust responsibilities in the event of the impossibility or impracticability of fulfillment of the trust terms also fails for the same reason.

. . . .

In an effort to avoid the risk of a trial of this action and *in search of a means of continuing the trust so as to carry out the original intentions of Dr. Sharpe*, the parties have negotiated at great length. Through their counsel, they have stated to the court that, subject to the court's approval, they have agreed to the entry of a judgment which would (1) enable Hammocks Beach Corporation to retain title to a sufficient portion of the land *to serve the trust purposes, with additional powers of administration* which should enable it to improve the property to the extent reasonably necessary and (2) vest in the Sharpe and Hurst families a reasonable portion of the land in exchange for their relinquishing rights in that portion to be vested solely in Hammocks Beach Corporation *as trustee.*

(Emphasis supplied). The trial court also concluded that "[i]f this litigation is not compromised and a trial ensues, Hammocks Beach Corporation will incur a substantial risk that the counterclaims of the defendants Sharpe and Hurst would prevail, with resulting termination of the trust and a conveyance of the real property to the Sharpe and Hurst families."

As a result of the parties' negotiations, the trial court ordered:

1. [Defendant], trustee, is vested with title to the following described portion of the real property which was conveyed by Dr. William Sharpe to [defendant] . . . .

2. [Defendant], trustee, *holds title to said property subject to the trust terms* set forth in the aforesaid deed dated August 10, 1950, . . . and in Agreement dated September 6, 1950 . . . Said trustee shall not, however, be under a prohibition against the mortgaging or sale of said property. On application to the court by motion, copy of which shall be served on the Attorney General, the Court may approve the encumbering of said property, or the sale of a portion thereof, *for the purpose of generating funds for use in furtherance of the terms of the trust.*

3. Said real property so vested in [defendant] as trustee shall be free and clear of any rights of the heirs of Dr. William Sharpe or of Gertrude Hurst or of the heirs of John and Gertrude Hurst.

(Emphasis supplied).

Viewing all the evidence in a light most favorable to plaintiffs and giving them the benefit of every reasonable inference to be drawn therefrom, the consent judgment could be construed as a tolling agreement to allow defendant, as trustee, to attempt to continue to "carry out the original intentions of Dr. Sharpe." If this interpretation of the consent judgment is correct, plaintiffs' contingent reversionary interests in the property at issue were not extinguished in 1987. The consent judgment would have only extinguished plaintiffs' extensive use and occupancy rights in exchange for the property conveyed to plaintiffs in fee simple and allowed defendant to attempt to adminis-ter the property to accomplish the trust purposes. Under this posi-tion, plaintiffs' complaint asserting claims for breach of fiduciary duty and the accounting and termination of the trust could be viewed as a challenge to defendant's stewardship and expenditures during the twenty years that have elapsed since the consent judgment was entered in 1987.

Alternatively, these documents could be viewed as revealing con-tradictory provisions: (1) defendant, as trustee, holds fiduciary title to the property subject to the express trust terms set forth in the 1950 deed, agreement, and defendant's Certificate of Amendment to their 1948 Certificate of Incorporation, which reserved extensive use and occupancy rights and a contingent reversionary interest to Dr. Sharpe and later to plaintiffs and (2) defendant holds title to the property "free and clear of any rights of" plaintiffs. Based upon these provi-sions, it is impossible to ascertain the parties' intent regarding exactly what rights plaintiffs were relinquishing when they signed the consent judgment. Under this interpretation, the terms of the consent judgment would be ambiguous at best, could not be "harmoniously construed," and present a question for the jury to resolve. *Duke Energy Corp.*, 178 N.C. App. at 65, 630 S.E.2d at 695.

The assertion that the consent judgment is ambiguous is sup-ported by the majority's opinion as it struggles to interpret and clar-ify the judgment by stating, "when the trial court in the 1987 consent judgment ordered that Defendant hold title to the property subject to the trust terms, the trial court was referring to the trust purposes."

If the consent judgment is ambiguous, the parties' intent is a question for the jury and not for the court as a matter of law, particularly at a very early stage of the litigation on a Rule 12(b)(6) motion to dismiss. *Dockery*, 144 N.C. App. at 422, 547 S.E.2d at 852. Liberally construing plaintiffs' complaint, I agree with the trial court that the allegations contained therein, treated as true, are sufficient to state a claim upon which relief may be granted. N.C. Gen. Stat. § 1A-1, Rule 12(b)(6); *Hunter*, 162 N.C. App. at 480, 593 S.E.2d at 598. The trial court correctly denied defendant's Rule 12(b)(6) motion to dismiss and its order should be affirmed.

### III. Unintended Consequences

Presuming *arguendo*, the consent judgment clearly and unambiguously extinguished plaintiffs' contingent reversionary interest in the property, an examination of future and unintended implications of the majority's holding is necessary. The State of North Carolina expressly disavowed any interest in the property both in 1987 and again in the present action, removing that contingency. The 1987 consent judgment expressly found and it is also undisputed that defendant cannot accomplish the purposes for which the trust was created. If plaintiffs' contingent reversionary interests were extinguished by the 1987 consent judgment, several results may occur.

### A. Escheat

First, if the trust is terminated, the trust *res* might be left without an owner. If property is left with no owner, is abandoned, or unclaimed, it will escheat to the State of North Carolina. *See* 1 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 4-10, at 65 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999) ("In North Carolina, all unclaimed or abandoned property escheats to the Escheat Fund. The state becomes a custodian of the property or the property's proceeds for the rightful owners, holding the one or the other in perpetuity for the rightful owner."); N.C. Gen. Stat. § 116B-2 (2005). Because the State has repeatedly disavowed any interest in the trust *res*, this result would deny the natural objects of the settlor's bounty an asset in preference to total strangers.

### B. *Cy Pres*

Second, if both the State's and plaintiffs' contingent reversionary interest were extinguished in 1987, then the settlor's "alternative plan in the event that the charitable trust is or becomes unlawful, impracticable, impossible to achieve, or wasteful" necessarily fails. N.C.

Gen. Stat. § 36C-4-413(d) (2005). If freed of Dr. Sharpe's "alternative plan" of transfer to the State or to the heirs, defendant, as trustee, would now be free to assert an action for *cy pres* under Article 2 of Chapter 36. N.C. Gen. Stat. § 36-4-413(b) (2005). In the *cy pres* proceeding, the trial court could modify the terms of the trust or terminate the trust as a whole. N.C. Gen. Stat. § 36C-4-413(a)(3) (2005). The import of the majority's holding is to not only extinguish plaintiffs' contingent reversionary interest, but to possibly: (1) extinguish the trust as a whole, and cause the property to escheat to the State or (2) subject Dr. Sharpe's original purposes to a wholly new and different purpose of defendant's choice, subject to court approval. Neither of these results can be what the majority's opinion intended to produce.

## IV.  Fee Simple Title

The only basis upon which the majority's holding could be predicated, is an unsubstantiated notion that the 1987 consent judgment vested defendant with fee simple title to the property. However, the parties and the court specifically chose not to use that operative language in describing the property to be vested in defendant, even though defendant's 1986 declaratory judgment action specifically sought that result. The 1987 consent judgment expressly conveyed that quality of title to the Sharpe and Hurst families in the property. The consent judgment states: "Said Sharpe and Hurst defendants are *the owners in fee simple* of the real property described, respectively, in the preceding paragraphs four and five, free and clear of any claim of Hammocks Beach Corporation, trustee." (Emphasis supplied).

This provision is substantial evidence that had the parties and the court intended for defendant to be vested with fee simple title, the consent judgment would have expressly stated such. Instead, the parties used language which tends to indicate defendant was vested with fiduciary title, subject to the express and continuing terms of the trust, but free of plaintiffs' extensive present and future use rights, which severely encumbered the development of the property.

The 1987 consent judgment also lifted the absolute prohibition against either sale or incurring debt by defendant in the 1950 deed, agreement, and defendant's Certificate of Amendment to their 1948 Certificate of Incorporation and provided for the possibility of both sales and encumbrances, subject to court approval. The majority's opinion asserts that the preceding provision supports the proposition

that all of plaintiffs' rights in the property at issue were extinguished in 1987. I disagree.

Persons or entities holding title to property in fee simple absolute, free of any claims of another party, need not and do not apply to the superior court to obtain approval of sale or to incur debt and encumber their property. See 1 James A. Webster, Jr., *Webster's Real Estate Law in North Carolina* § 4-6, at 60 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999) ("Perhaps the most important quality of a fee simple estate is that the owner may voluntarily dispose of his land as he sees fit, either by deed or will, free from the control of third persons, so long as he complies with the legislative and constitutional requirements of the state and federal governments as they relate to land."). The consent judgment clearly shows defendant was not vested with fee simple title. At a minimum, a jury question exists regarding whether plaintiffs' contingent reversionary interest, as expressly reserved by Dr. Sharpe, was extinguished by the 1987 consent judgment.

## V.  Conclusion

Defendant has failed to show the trial court's denial of defendant's Rule 12(b)(6) motion to dismiss affects a substantial right. Defendant's appeal is interlocutory and should be dismissed.

Presuming defendant's appeal is properly before this Court, the trial court's order denying defendant's Rule 12(b)(6) motion should be affirmed. The 1987 consent judgment could be construed as a tolling agreement allowing defendant, as trustee, to continue to "carry out the original intentions of Dr. Sharpe." If so, plaintiffs' contingent reversionary interests were not extinguished in 1987. Alternatively, the consent judgment contains conflicting provisions which render the judgment ambiguous. If the consent judgment is ambiguous, the intent of the parties regarding the provisions of the consent judgment is a question for the jury. *Dockery*, 144 N.C. App. at 422, 547 S.E.2d at 852. The majority's opinion, in effect, grants defendant the relief it sought for fee simple title, but clearly did not obtain in the 1987 consent judgment.

"The polestar of trust interpretation is the settlors' intent." *Day v. Rasmussen*, 177 N.C. App. 759, 764, 629 S.E.2d 912, 915 (2006) (citation and quotation omitted). The majority's opinion allows defendant to freely manage, use, borrow against, or sell the trust *res* for purposes and uses Dr. Sharpe never intended. Defendant is also now free

**BARTLETT MILLING CO. v. WALNUT GROVE AUCTION & REALTY CO.**

[192 N.C. App. 74 (2008)]

of any expressly reserved rights to Dr. Sharpe's heirs to hold the trustee accountable for its fiduciary duties.

I vote to dismiss defendant's appeal as interlocutory or, in the alternative, to affirm the trial court's order and remand for further proceedings. I respectfully dissent.